**Reversed and Rendered and Opinion filed August 21, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00330-CV

**UNITED RESIDENTIAL PROPERTIES, L.P., WILLIAM MAXWELL AND TIFFANY TALLENT, Appellants**

**V.**

**TOM AND DWANA THEIS, Appellees**

**On Appeal from the County Civil Court at Law No. 4**
**Harris County, Texas**
**Trial Court Cause No. 855506**

## O P I N I O N

Tom and Dwana Theis sued United Residential Properties, L.P. (URP), William Maxwell, and Tiffany Tallent (collectively, Appellants) for fraud and deceptive trade practices arising out of the Theises' purchase of a mold-infested manufactured home from URP.

After a bench trial, the court signed a final judgment in the Theises' favor. Appellants challenge the trial court's judgment in ten issues, arguing among other things

that (1) the trial court lacked jurisdiction; (2) there is no evidence of an agency relationship between URP and the individual who made a misrepresentation to the Theises; and (3) the trial court erred by not awarding attorney's fees to Appellants.

We hold that the trial court had jurisdiction; there is no evidence of an agency relationship; and Appellants are not entitled to attorney's fees. Accordingly, we reverse and render judgment that the Theises take nothing.

## BACKGROUND

Nelda Enriquez owned and lived in a manufactured home, but she vacated the home after she and her daughter became sick. Enriquez allowed the home to be foreclosed because "the home was molded and it was uninhabitable." URP purchased the home from Enriquez's mortgagee, but the home remained on Enriquez's property. Enriquez testified that a man named Todd McCarty came to her property and said "he worked for United Realty or United Properties or something to that sort. He gave me a card, and he was bringing some people to show the home." She told McCarty that the home was infested with mold, but "he said for me to shut up, that he would pay me to stay away from him when he brought people." She alleged that he offered her $300 to refrain from telling anyone the home had mold.

Tom Theis testified that he became familiar with URP when Dwana responded to an ad in the paper. The Theises met with McCarty, who gave Tom a business card that stated, "United Residential Properties, Todd McCarty." McCarty took the Theises to look at the manufactured home Enriquez had owned. McCarty gave the price and "kept saying [there] wasn't anything wrong with the house." Tom noticed some "black stuff" inside the home but thought it was just dirt, so he did not ask McCarty about it.

The Theises purchased the house from URP in July 2005. When Tom met with Enriquez to arrange for the home to be moved from her property, Enriquez told him that the house had mold. After discovering mold in the home, the Theises sued URP, Maxwell, and Tallent. The Theises alleged in their live pleading that McCarty was an employee of URP, and that URP, Maxwell, and Tallent were liable for breach of contract,

2

fraud, and false representations and unconscionable conduct under the Deceptive Trade Practices–Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41–17.63 (Vernon 2011) (DTPA).

The trial court signed findings of fact and conclusions of law, in which it determined that Appellants were liable for fraud, false and misleading representations under the DTPA, and unconscionable conduct under the DTPA. The trial court signed a final judgment in favor of the Theises finding Appellants jointly and severally liable for economic damages of $45,000, additional damages of $67,500 for intentional and unconscionable conduct, attorney's fees of $25,000, and additional post-judgment and appellate attorney's fees.[1]

<h2 align="center">JURISDICTION</h2>

In their first and second issues, Appellants argue that the trial court lacked subject matter jurisdiction because (1) the court dismissed the case and then reinstated it after the court's plenary power expired; and (2) the Theises failed to exhaust administrative remedies required under the primary and exclusive jurisdiction doctrines.

## I.     Jurisdiction to Reinstate

On October 30, 2006, the trial court dismissed the Theises' suit for want of prosecution. The Theises' counsel at the time, Charles Heard, mailed to the court a verified motion to reinstate on November 30, 2006; it was received on December 4, 2006.[2] The Theises concede that Heard's motion was filed more than 30 days after the

---

[1] The trial court found that Maxwell and Tallent were general partners in URP and included a conclusion of law stating that "[g]eneral partners are, individually, jointly and severally liable for the debts of a limited partnership." Maxwell and Tallent contend on appeal that they were not general partners of URP. The resolution of this appeal does not turn on whether Maxwell and Tallent were general partners.

[2] Heard alleged:

> On November 30, 2006, the Plaintiffs' counsel made a routine call to the Court to check the progress of the motion for continuance, only to be told that the Court had dismissed the lawsuit.
> The Plaintiffs file this motion immediately on having notice of the Court's

trial court signed the dismissal order.

Generally, a motion to reinstate must be filed within 30 days of the trial court's dismissal. *See* Tex. R. Civ. P. 165a(3). This deadline is jurisdictional, and a trial court loses jurisdiction to reinstate a dismissed case after the deadline. *See, e.g.*, *Walker v. Harrison*, 597 S.W.2d 913, 915 (Tex. 1980) ("This court has repeatedly held that the time limits provided in rule 165a are mandatory and jurisdictional and that orders of reinstatement entered after their expiration are void.").

Nonetheless, the trial court reinstated the case on December 29, 2006. Appellants did not immediately complain about the reinstatement, and the case proceeded to trial on the merits in February 2011. The trial court signed its final judgment on March 18, 2011. On April 12, 2011, Appellants filed a plea to the jurisdiction and alternative motion for new trial raising the alleged jurisdictional defect concerning the trial court's 2006 reinstatement of the case. The Theises responded by filing on May 13, 2011 a "motion to extend postjudgment deadlines" under Texas Rule of Civil Procedure 306a(4)–(5) and affidavits from Tom, Dwana, and Heard. The trial court denied Appellants' plea to the jurisdiction and motion for new trial in an order signed on May 27, 2011. The trial court did not expressly rule on the Theises' motion; it scratched out the portions of the order submitted by the Theises reciting that they did not receive actual notice of the dismissal order until November 30, 2006.[3]

---

action, within 30 days of receipt of notice of the dismissal. The Court, therefore, has jurisdiction to reinstate this case. Tex. R. Civ. P. 165a(3).

[3] On appeal, the Theises suggest without a reference to the record that their motion was "denied by the trial court." They contend in their "Reply to issue 1 and Counter-Issue" that "the trial court abused its discretion in failing to re-set the deadlines, and this Court should do so." Appellants contend that the Theises did not file a notice of appeal in the trial court, and thus, they cannot present this counter-issue. The Theises were not required to file a notice of appeal to present this counter-issue because they do not seek to alter the trial court's judgment to award them greater relief than previously awarded. *See* Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal. . . . The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause."); *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 490 (Tex. App.—Dallas 2010, no pet.) ("[A]ppellees do not seek to alter the trial court's order . . . . Consequently, appellees were not required to file a notice of cross-appeal."); *Dean v. Lafayette Place (Section One) Council of Co-Owners, Inc.*, 999 S.W.2d 814, 818 (Tex. App.—Houston

Rule 165a(3) states that a motion to reinstate must be filed "within 30 days after the order of dismissal is signed or within the period provided by Rule 306a." Tex. R. Civ. P. 165a(3). Rule 306a provides:

> **1. Beginning of periods.** The date of judgment or order is signed as shown of record shall determine the beginning of the periods prescribed by these rules . . . for filing in the trial court the various documents that these rules authorize a party to file within such periods including . . . motions to reinstate a case dismissed for want of prosecution . . . .
>
> *     *     *
>
> **4. No notice of judgment.** If within twenty days after the judgment or other appealable order is signed, a party adversely affected by it or his attorney has neither received the notice required by paragraph (3) of this rule nor acquired actual knowledge of the order, then with respect to that party all the periods mentioned in paragraph (1) shall begin on the date that such party or his attorney received such notice or acquired actual knowledge of the signing, whichever occurred first, but in no event shall such periods begin more than ninety days after the original judgment or other appealable order was signed.
>
> **5. Motion, notice and hearing.** In order to establish the application of paragraph (4) of this rule, the party adversely affected is required to prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first either received a notice of the judgment or acquired actual knowledge of the signing and that this date was more than twenty days after the judgment was signed.

Tex. R. Civ. P. 306a. A properly filed and granted motion under Rule 306a(5) "restarts the postjudgment timetable." *Moore Landrey, L.L.P. v. Hirsch & Westheimer, P.C.*, 126 S.W.3d 536, 541 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (emphasis omitted).

When a trial court does not make findings on the Rule 306a motion, as here, we will infer necessary findings in favor of the trial court's judgment unless the record contains no evidence to support the finding or conclusive evidence negating the finding. *See In re Lynd Co.*, 195 S.W.3d 682, 686 (Tex. 2006). The Theises' motion and

---

[1st Dist.] no pet.) ("If an appellee is satisfied with the relief granted by the trial court, but merely wants to present additional, independent grounds for affirming the trial court's judgment, no notice of appeal is required. The independent grounds for affirmance can be raised in a cross-point as long as the appellee is not requesting greater relief than that awarded by the trial court.").

affidavits filed in May 2011 in response to Appellants' April 2011 plea to the jurisdiction establish that Heard or the Theises first obtained notice of the trial court's dismissal order on November 30, 2006.[4] Appellants do not contend otherwise.

Instead, Appellants argue that the trial court could not retroactively extend the postjudgment deadlines more than four years after the trial court allegedly lost jurisdiction. We disagree. "The rules do not set a deadline for filing a motion under Rule 306a(5). . . . Rule 306a(5) does not prohibit a motion from being filed at any time within the trial court's plenary jurisdiction measured from the date determined under Rule 306a(4). . . . Rule 306a simply imposes no deadline, and none can be added by decision, other than the deadline of the expiration of the trial court's jurisdiction." *John v. Marshall Health Servs., Inc.*, 58 S.W.3d 738, 741 (Tex. 2001) (per curiam).

In *John v. Marshall Health Services, Inc.*, the Texas Supreme Court held that a Rule 306a motion was timely filed under the following facts: The trial court signed its judgment on September 8, 1999; John obtained actual notice of the judgment on September 30; he filed a motion for new trial on October 13 — more than 30 days after September 8, but within 30 days of obtaining actual notice on September 30;[5] and John filed a Rule 306a motion on December 10. *See id.* at 739–40. The supreme court held that John's notice of appeal filed on December 13 was timely because the motion for new trial was not overruled by operation of law until December 14 — 75 days after **September 30**, the date on which John obtained actual notice of the judgment. *See id.* at 741. Therefore, John's motion for new trial extended the trial court's jurisdiction even though his Rule 306a motion was filed at a time when the trial court would not have had jurisdiction but for the filing of the motion for new trial. *See id.* In other words, John's Rule 306a motion was timely even though the motion for new trial would have been

---

[4] Heard stated in his affidavit that he had no notice of the dismissal order before November 30, 2006, and he was unaware of the dismissal order "until [he] spoke with the court's clerk on November 30, 2006." Both of the Theises stated in their affidavits that they did not know of and had no notice of the dismissal order before "mid-April 2011."

[5] *See* Tex. R. Civ. P. 326b (motion for new trial must be filed within 30 days after signing of the judgment).

untimely without the retroactive extension of postjudgment deadlines as measured from the date determined in John's Rule 306a motion.

Similarly, the Theises' Rule 306a motion was filed "within the trial court's plenary jurisdiction measured from the date determined under Rule 306a(4)." *See John*, 58 S.W.3d at 741. The "date determined under Rule 306a(4)" was November 30, 2006 — the date Heard obtained actual knowledge of the dismissal order. Heard's motion to reinstate filed on November 30, 2006 was filed within 30 days of the signing of the dismissal order, as extended by 306a(4).

Under these rules, Heard's motion to reinstate was timely filed even though the Theises' Rule 306a motion would have been untimely but for the motion to reinstate, the order reinstating the case, and the post-judgment motion for new trial filed by Appellants on April 12, 2011. The trial court granted the motion to reinstate while the court had jurisdiction as measured from the date determined under Rule 306a(4). The trial court's granting of the motion to reinstate extended the trial court's plenary jurisdiction until 30 days after the trial court signed an order denying Appellants' timely filed motion for new trial on May 27, 2011. *See Neese v. Wray*, 893 S.W.2d 169, 171 (Tex. App.—Houston [14th Dist.] 1995, no writ) ("The trial court never lost jurisdiction because it acted [to reinstate a case under Rule 165a], as it was empowered to do, within the period . . . of plenary power."); *see also* Tex. R. Civ. P. 329b(e) (trial court's jurisdiction extends 30 days after overruling a motion for new trial). Thus, the trial court had jurisdiction in May 2011 when the Theises filed their Rule 306a motion. Applying the reasoning from *John* to this case, we conclude that the Theises' Rule 306a motion was timely filed.

Appellants' first issue is overruled.

## II.     Exhaustion of Administrative Remedies

Appellants contend that the Theises were required to exhaust administrative remedies under the Texas Manufactured Housing Standards Act[6] (TMHSA) before

---

[6] Tex. Occ. Code Ann. ch. 1201 (Vernon 2012).

7

bringing suit because the Texas Manufactured Housing Board has primary or exclusive jurisdiction over the Theises' claims. The Theises contend that the statute does not confer primary or exclusive jurisdiction upon the Board to address their fraud and DTPA claims, and that Appellants failed to comply with the statute by requesting that the Board conduct an inspection.[7]

We review *de novo* whether an agency has primary or exclusive jurisdiction. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex. 2002). "An agency has exclusive jurisdiction when a pervasive regulatory scheme indicates that [the Legislature] intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *Id.* at 221 (quotation omitted). Under the exclusive jurisdiction doctrine, the Legislature grants an agency the sole authority to make an initial determination in a dispute. *Id.* "The judicially-created primary jurisdiction doctrine operates to allocate power between courts and agencies when *both* have authority to make initial determinations in a dispute." *Id.* Trial courts should employ the primary jurisdiction doctrine to allow an agency to initially decide an issue when "(1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations." *Id.*

When a plaintiff has not exhausted administrative remedies, the primary jurisdiction doctrine generally requires abatement to allow the agency to make an initial determination while the exclusive jurisdiction doctrine requires dismissal for lack of subject matter jurisdiction. *See id.*

Appellants do not cite any authority holding that the TMHSA confers exclusive or primary jurisdiction to an administrative agency for non-warranty DTPA and fraud claims related to the sale of a manufactured home, and this court has found none. All of

---

[7] The Theises do not contend that they pursued administrative remedies before bringing suit.

8

the cases Appellants cite in support of exclusive jurisdiction involved clear statutory language granting the administrative agency exclusive jurisdiction. *See id*. at 223 (exclusive jurisdiction when the statute gave the agency "exclusive, original jurisdiction to regulate"); *Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 803 (Tex. 2002) (citing Tex. Lab. Code Ann. § 408.001 (Vernon 2005)) (exclusive jurisdiction when the statute stated, "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance . . . ."); *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 437–38 (Tex. App.—Austin 2004, no pet.) (same); *cf. Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 17 (Tex. 2000) (no exclusive jurisdiction when the statute provided that a "pledgor may seek a remedy in court").[8]

"Courts of general jurisdiction presumably have subject matter jurisdiction unless a contrary showing is made. . . . [Agencies] may exercise only those powers the law, in clear and express statutory language, confers upon them. Courts will not imply additional authority to agencies . . . ." *Subaru*, 84 S.W.3d at 220 (citations omitted). The TMHSA does not include clear and express statutory language conferring exclusive jurisdiction to an administrative agency for the Theises' common law fraud claim and non-warranty DTPA claims. The statute concerns only warranty claims.[9]

---

[8] Appellants cite several additional cases without explaining how they apply to this case; we have reviewed the authorities and find none instructive for the resolution of this case. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922 (Tex. 1998); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440 (Tex. 1993); *Ford Motor Co. v. Butnaru*, 18 S.W.3d 762 (Tex. App.—San Antonio 2000), *rev'd* 84 S.W.3d 198 (Tex. 2002); *Bd. of Adjustment of Corpus Christi v. Flores*, 860 S.W.2d 622 (Tex. App.—Corpus Christi 1993, writ denied).

[9] The TMHSA requires a consumer to give written notice to a manufacturer, retailer, or installer of a need for warranty service or repairs. *See* Tex. Occ. Code Ann. § 1201.353. A consumer, manufacturer, retailer, or installer "may" request that the Texas Department of Housing and Community Affairs perform an inspection of the manufactured home. *Id.* § 1201.355. A party's request for such an inspection triggers further conduct by the Department, such as issuing a report that addresses whether the consumer's complaints are covered by warranty; and if necessary, the Department may issue orders for corrective action to be taken by the manufacturer, retailer, or installer. *See id.* § 1201.356. Failure to comply with the Department's orders may result in administrative action against the manufacturer, retailer, or installer, such as license suspension or revocation and penalties paid to a trust fund, *see id.* §§ 1201.357(b), 1201.605, 1201.611(h), which may be used to satisfy unpaid consumer claims, *see id.* §§ 1201.401–1201.410. Judicial review may be obtained by filing a petition in a Travis County district court. *See id.* §§ 1201.553, 1201.611(f).

9

Further, Appellants have failed to establish that an administrative agency has primary jurisdiction over the fraud and DTPA claims. Appellants make no argument regarding the Board's specialized expertise or the lack of uniformity in judicial resolution of fraud and non-warranty DTPA claims involving manufactured homes. *Cf. Cash Am.*, 35 S.W.3d at 18 (Texas Pawn Shop Act did not confer primary jurisdiction to Consumer Credit Commissioner over plaintiff's claims for conversion and negligence despite administrative remedy available to plaintiff).

The only section that arguably confer jurisdiction to the Texas Department of Housing and Community Affairs addresses warranty claims. Section 1201.602 provides:

> (a) Notwithstanding any other law, a suit alleging that a manufacturer, installer, or retailer failed to perform warranty service or failed to comply with a written or implied warranty is abated if:
>
>> (1) a plea in abatement is filed with the court not later than the 45th day after the movant's answer date; and
>>
>> (2) the manufacturer, installer, or retailer requests a consumer complaint home inspection under Section 1201.355.
>
> *            *            *
>
> (c) A consumer's refusal to allow the manufacturer or retailer to perform warranty service in accordance with the inspection report, determinations, and orders of the director bars a cause of action relating to an alleged failure to:
>
>> (1) comply with a written or implied warranty; or
>>
>> (2) perform warranty service.

Tex. Occ. Code Ann. § 1201.602.

The Texas Supreme Court interpreted the predecessor statute, which contained substantively similar language. *See Holder v. Wood*, 714 S.W.2d 318 (Tex. 1986). The court held that this statute does not require abatement of any claims based on misrepresentations in violation of the DTPA. *See id.* at 319; *see also Thurston v. Green Tree Acceptance of Tex., Inc.*, 853 S.W.2d 806, 810 (Tex. App.—Tyler 1993, writ

denied) (misrepresentation and unconscionability DTPA claims did not relate to breach of warranty claims under prior version of Section 1201.602). The record establishes that the Theises recovered for common law fraud and non-warranty violations of the DTPA. Although the Theises' initial petition claimed a breach of warranty, their live pleading did not include this language. The court's findings of fact and conclusions of law were based on theories of fraud, misrepresentation, and unconscionability — not breach of warranty.[10]

Regardless, Appellants have failed to establish that they actually complied with Section 1201.602 by filing a plea in abatement within 45 days from their answer date or requesting a consumer complaint inspection under Section 1201.355. Although Appellants argue that they attempted to have the manufactured home inspected, there is nothing in the record indicating they made this request to the Department as required by Section 1201.355. *See* Tex. Occ. Code Ann. § 1201.355.

Appellants' second issue is overruled.

### SUFFICIENCY OF THE EVIDENCE

In their fifth issue, Appellants argue that there is no evidence to support the trial court's findings that McCarty was an agent, employee, or representative of URP. Thus, Appellants contend that URP, Maxwell, and Tallent could not be vicariously liable for fraud or DTPA claims based on misrepresentations made by McCarty. We agree.

A trial court's findings of fact issued after a bench trial are reviewable for legal sufficiency of the evidence by the same standards as applied in reviewing the sufficiency of the evidence supporting a jury's finding. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). Evidence is legally insufficient if: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence

---

[10] The court made multiple findings concerning fraud, misrepresentation, reliance, and unconscionability. The court made no findings of fact or conclusions of law regarding breach of contract or breach of warranty.

11

offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *Custom Transit, L.P. v. Flatrolled Steel, Inc.*, No. 14-10-00936-CV, ___ S.W.3d ___, 2012 WL 2154501, at *3 (Tex. App.—Houston [14th Dist.] June 14, 2012, no pet. h.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005)). We must view the evidence in the light most favorable to the trial court's findings and assume that the court resolved all conflicts in accordance with its judgment. *See City of Keller*, 168 S.W.3d at 820. We credit evidence favorable to the trial court's findings if reasonable fact finders could, and we disregard contrary evidence unless reasonable fact finders could not. *See id.* at 827. The ultimate test is whether the evidence at trial would enable reasonable and fair-minded people to reach the finding under review. *Id.*

The trial court found that McCarty (1) "made false and misleading representations of fact about the standard, quality or grade of goods when he represented to the [Theises] that the Home was in good condition;" (2) "failed to disclose material facts regarding the Home of which he had knowledge when he failed to tell the [Theises] about the mold problem in the Home as he had been informed by Nelda Enriquez, and such failure . . . was a false, misleading or deceptive practice;" (3) "intentionally engaged in an unconscionable action or course of action when he failed to disclose to the [Theises] the information regarding mold that was told to him by Nelda Enriquez;" and (4) "knowingly and intentionally committed fraud against [the Theises]."

The Theises alleged in their live pleading that McCarty was URP's employee, and the trial court found that McCarty was a "sales representative for URP" and was "acting on behalf of URP." The Theises contend that these findings are supported by the following evidence:

- "Nelda Enriquez testified that Mr. McCarty had told her that he was acting on behalf of URP."[11]

---

[11] Enriquez testified:
Q: And how did you come to meet Todd McCarty?
A: He came to my property that he worked for United Realty or United Properties or

12

- "Mr. McCarty gave Mr. Theis a URP business card."[12]
- "Mr. McCarty represented to Mr. and Mrs. Theis that he represented URP by giving a price and negotiating the sale of the home on behalf of URP."[13]
- "Mr. Theis testified that Mr. McCarty is the individual who picked up the purchase money certified check from Mr. Theis on behalf of URP."[14]

Viewing this evidence in the light most favorable to the trial court's findings, we nonetheless conclude that there is no evidence of agency, either actual or apparent, because there are no statements, actions, or omissions made by URP directed to McCarty or the Theises indicating that McCarty was URP's employee or agent and had authority to make representations about the property on URP's behalf.

"Texas law does not presume agency, and the party who alleges it has the burden of proving it." *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) (citing *Buchoz v. Klein*, 184 S.W.2d 271, 271 (Tex. 1944)). To hold an employer vicariously liable for

---

something to that sort. He gave me a card, and he was bringing some people to show the home.
. . . .
Q: . . . . And you said that Mr. McCarty worked for some company, you're not quite sure?
A: United Realty or United Properties. I am not sure.

[12] Tom Theis testified:
Q: What did you understand Todd McCarty's position in relation to URP, please?
A: It was my understanding he worked for URP.
Q: What gave you that understanding?
A: He handed us a business card.
. . . .
THE COURT: . . . What did the business card say?
A: United Residential Properties, Todd McCarty

[13] Tom Theis testified:
Q: And did you negotiate that price with anyone?
A: Not really.
Q: Who gave you the price?
A: Todd McCarty.
Q: And what was the price he quoted you?
A: I think it was thirty-two five or something like that. It was not much negotiations.

[14] Tom Theis testified:
Q: And how did you get the money to URP?
A: Todd McCarty came by my office and picked it up, picked up the check.

13

the misconduct of its employee, the plaintiff must prove that (1) an agency relationship existed between the alleged employee and employer; (2) the employee committed the act; and (3) the act was in the course and scope of the employee's authority. *Zarzana v. Ashley*, 218 S.W.3d 152, 159 (Tex. App.—Houston [14th Dist.] 2007, pet. struck). To establish that an employee acted within the course and scope of employment, a plaintiff must first demonstrate that the conduct occurred within the general authority given to the employee. *Id.*

"Actual authority usually denotes the authority a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses." *Peek/Howe Real Estate, Inc. v. Brown & Gay Eng'rs, Inc.*, No. 14-11-00510-CV, 2012 WL 3043026, at *3 (Tex. App.— Houston [14th Dist.] July 26, 2012, no pet. h.) (mem. op.). "Actual authority is created through written or spoken words or conduct of the principal communicated to the agent." *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549–50 (Tex. App.— Houston [14th Dist.] 2003, no pet.).

"Apparent authority is based on estoppel, and only the conduct of the principal in leading a third party to believe that the agent has authority may be considered." *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 784 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007); *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996)). "Without the principal's participation, either through its acts or knowledge of, and acquiescence in those of the agent, no mere combination of circumstances, including acts of the purported agent which may mislead persons into a false inference of authority, however reasonable, will serve as the predicate for apparent authority." *Id.* (quotation omitted).

In sum, "'actual and apparent authority are created through conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority).'" *Zarzana*, 218 S.W.3d at 159 (quoting *Huynh v. Nguyen*, 180 S.W.3d 608, 622–23 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). This requirement applies to

14

DTPA violations and intentional torts such as fraud committed by alleged agents or employees. *See id.* at 159–62.

The Theises fail to identify any statements or conduct by URP, Maxwell, or Tallent that would support a finding that McCarty was an employee of URP acting within the scope of actual or apparent authority. McCarty's own representations of purported authority are not representations by URP. *See River Mountain at Breckenridge, Inc. v. Mut. of N.Y. Fin. Servs.*, No. C14-94-00084-CV, 1994 WL 652766, at *2–4 (Tex. App.—Houston [14th Dist.] Nov. 17, 1994, writ denied) (not designated for publication) (no evidence of apparent authority when (1) alleged agent had an office at the alleged principal's place of business; (2) agent distributed the principal's business cards; (3) agent used the principal's stationary; and (4) agent told the plaintiffs that the principal was in the type of business performed by the agent); *Edington v. S. Old Line Life Ins. Co.*, 55 S.W.2d 579, 580 (Tex. Civ. App.—Amarillo 1932, no writ) (no evidence of agency or scope of authority when the alleged agent wrote a letter on letterhead bearing the company's name, and the agent furnished a business card with his name, job title, and company's name); *see also Gen. Am. Life Ins. Co. v. AmSouth Bank*, 100 F.3d 893, 898 (11th Cir. 1996) (no evidence of apparent authority despite stationary and business cards containing name of alleged principal and identifying the alleged agent as "general agent"); *Long v. Aronov Mgmt., Inc.*, 645 F. Supp. 2d 1008, 1034 (M.D. Ala. 2009) (summary judgment based on lack of agency because the principal's "business cards do not reflect the authority to bind" the principal); *CSX Transp., Inc. v. Recovery Express, Inc.*, 415 F. Supp. 2d 6, 11–12 (D. Mass. 2006) (collecting cases) ("The Court could find no cases where, for example, giving someone a business card with the company name or logo, access to a company car, or company stationary, by themselves, created sufficient indicia of apparent authority." (emphasis omitted)); *Edna Enters., Inc. v. Spirco Envtl., Inc.*, 853 S.W.2d 388, 392 (Mo. Ct. App. 1993) (no evidence of apparent authority to bind the alleged principal to any contract or specific action when principal had in the past furnished the alleged agent, a subcontractor, with business cards containing the

15

principal's logo and agent's name); *Smith v. Hansen, Hansen & Johnson, Inc.*, 818 P.2d 1127, 1134 (Wash. Ct. App. 1991) (no evidence of agent's authority to sell principal's products despite evidence that the principal furnished agent with an office, telephone, and business cards); *cf. Clubb Testing Serv., Inc. v. Singletary*, 395 S.W.2d 956, 958 (Tex. Civ. App.—San Antonio 1965, no writ) (letters written by alleged agent on company letterhead insufficient to prove authority of the agent).

Because there is no evidence to support the trial court's finding of agency, URP, Maxwell, and Tallent are not liable for misrepresentations by McCarty. The Theises based their claims entirely on misrepresentations and omissions by McCarty; accordingly, we must reverse the trial court's judgment.[15]

Appellants' fifth issue is sustained.

### ATTORNEY'S FEES

In their sixth issue, Appellants argue that Maxwell is "entitled to recover his attorneys' fees incurred in defending the allegations of breach of contract Tex. Civ. Prac. & Rem. Code Ann. 38.01 et. seq." because the Theises failed "to put on any evidence of breach of contract." The Theises contend that Appellants did not assert a breach of contract claim, and a successful defending party is not entitled to recover attorney's fees. We agree. *See, e.g.*, *Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 490–91 (Tex. App.— Houston [1st Dist.] 2006, pet. denied); *Wilson & Wilson Tax Servs., Inc. v. Mohammed*, 131 S.W.3d 231, 240 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Appellants' sixth issue is overruled.

---

[15] The Theises concede that they did not prevail on a breach of contract claim, and the trial court's findings of fact and conclusions of law support this conclusion.

## CONCLUSION

Having found no evidence of agency, we reverse the trial court's judgment and render judgment that the Theises take nothing.[16]


                                        /s/     William J. Boyce
                                                Justice


Panel consists of Justices Boyce, Christopher, and Jamison.

---

[16] We need not address the remainder of Appellants' issues because they are unnecessary to the final disposition of this appeal.  *See* Tex. R. App. P. 47.1.

17