**Affirmed and Opinion filed January 29, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00496-CV

**HARRIS COUNTY FRESH WATER SUPPLY DISTRICT NO. 61, Appellant**

**V.**

**FWO DEVELOPMENT, LTD, Appellee**

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-44925**

## O P I N I O N

In this interlocutory appeal, Harris County Fresh Water Supply District No. 61 (the "Water District") challenges the trial court's denial of its jurisdictional grounds for dismissal raised in a summary-judgment motion.[1] Specifically, the

---

[1] The trial court denied the Water District's summary-judgment motion it its entirety; in this interlocutory appeal, however, we consider only whether the trial court properly concluded that it had jurisdiction over this case. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (providing for an interlocutory appeal when a trial court denies a governmental unit's challenge to subject-matter jurisdiction). Additionally, the District filed a separate plea to the jurisdiction, with its answer. Because it raised the same jurisdictional grounds as those raised in the its

Water District asserts that FWO Development, Ltd. ("FWO") failed to exhaust its administrative remedies through an appeal to the Texas Commission on Environmental Quality (the "Commission"), thus depriving the trial court of subject-matter jurisdiction. It further argues that the Commission is vested with exclusive jurisdiction to decide issues such as the amount of interest reimbursable to a developer such as FWO, with the result that the trial court has no subject-matter jurisdiction over FWO's breach of contract claim for additional reimbursement of this interest from the Water District. Because we conclude that the trial court has subject-matter jurisdiction over FWO's breach-of-contract claim against the Water District, we affirm the trial court's denial of the jurisdictional issues raised in the Water District's motion for summary judgment.

## BACKGROUND

On July 20, 2005, the Water District[2] and FWO entered into a contract, pursuant to which FWO agreed to pay for and construct specific water facilities necessary for development of property it owned and wished to develop within the Water District. In return, the Water District agreed to issue bonds necessary to reimburse FWO for certain costs associated with construction of the facilities. The contract between the parties required the Water District to "make its best efforts to issue bonds (the "Bonds") at the earliest time for the purpose of purchasing the Facilities from [FWO], . . . *together with interest thereon*." (emphasis added). In exchange for reimbursement from the bond proceeds, FWO agreed to convey the facilities to the Water District. FWO agreed to cooperate in transferring title to the

summary-judgment motion, the trial court's denial of the motion operates as a denial of the plea to the jurisdiction. *See Thomas v. Long*, 207 S.W.3d 334, 339–40 (Tex. 2006).

[2] The Water District was converted to a municipal utility district subject to Chapters 49 and 54 of the Texas Water Code on July 23, 1975.

facilities by "executing such documents as necessary to memorialize title as the Water District may require."

Specifically, once FWO constructed the facilities, the Water District promised to "use its best efforts to issue, sell and deliver its bonds . . . on the best available terms as soon as reasonably practical" in accordance with the other terms of the contract. The Water District would then use the proceeds of the sale of the bonds to pay the "Reimbursable Share" incurred by FWO in the manner and amount approved by the Commission. "Reimbursable Share" is defined by the contract as "the maximum amount of reimbursement allowable for projects under the Rules of the Commission and allowed and approved by the Commission, together with interest thereon, calculated from the date of payment by [FWO] . . . through the date of acquisition of the facilities," with the interest rate equal to the "net effective interest rate at which the bonds are sold." The contract additionally provides: "Notwithstanding any other provisions of this Contract, [FWO] agrees to waive any and all claims against other sources of revenues of the District, and to look solely to the issuance of Bonds as the source of reimbursement for [FWO]."

In 2008, the Water District began preparing an application to the Commission for approval of both various developers' projects, including FWO's project, and the issuance of bonds to be used to reimburse these developers for the cost of these projects. At an August 27, 2008 meeting of the Water District board of directors, a representative from FWO raised several issues concerning reimbursement to FWO under the 2008 bond application. One of the issues he raised was the interest to be reimbursed under the bond application. The board's attorney informed him that "all District preconstruction agreements with past and current developers call for payment of no greater than two years interest on the

eligible costs."[3]  The FWO representative informed the board that "Commission rules may permit additional interest to be paid under certain circumstances."  The minutes from this meeting state, "[T]he Board declined to extend any interest past the two-year interest authorized by the District's reimbursement agreement."  FWO did not appeal the Water District decision to request only two years reimbursement of interest in its bond application to the Commission.[4]

In January 2009, after the facilities were constructed, the Water District applied to the Commission for approval of the projects and issuance of the bonds for reimbursement.  On September 18, 2009, the Commission issued its initial order approving the projects and bond issuance, including interest reimbursement of only two years for FWO as requested by the Water District.  One of the other developers challenged the Commission's order, which had denied certain costs for which the Water District had sought reimbursement.  That challenge resulted in the Commission's issuing a revised order on February 9, 2010.  This order also limited FWO's interest reimbursement to two years.

That same developer asserted an administrative challenge to the revised order, which was overruled.  The developer then unsuccessfully sued the Commission.  Following the conclusion of these unsuccessful challenges, the Water District began the process of issuing the bonds authorized by the Commission's revised order almost eighteen months later, in July 2011.  The minutes from a July 20, 2011 Water District Board Meeting indicate that FWO had corresponded with the Water District on July 13 and July 15, 2011, requesting that

---

[3] The contract contains no such limitation on interest reimbursement.

[4] *See* Tex. Water Code § 54.239 (providing that a person aggrieved by a decision of a board involving cost, purchase, or use of facilities may appeal to the Commission by filing a petition with the Commission within thirty days after the date of the decision); 30 Tex. Admin. Code § 293.180 (Tex. Comm'n on Envtl. Quality, Appeal of District Decisions) (same).

4

the District consider reimbursement of approximately $240,000.00 in additional developer interest. The minutes reflect that the Water District's attorney "confirmed the Board's position that it will not be making any application to the Commission to amend the bond order to pay additional interest to any party." The bond sale was tentatively scheduled for August 10, 2011.

On July 22, 2011, the Water District responded in writing to FWO's correspondence of July 13 and 15, 2011. In this letter, the District stated:

> The District respectfully disagrees with FWO's assertion that the District is required to pay additional interest above the two years authorized under the Commission staff memorandum dated February 5, 2010 and Order dated February 9, 2010. The District will not be making an amended application for additional interest for any party.
>
> . . .
>
> The District will require the execution of a release and a conveyance of facilities at the time reimbursement occurs. Any litigation filed by FWO will only complicate matters and result in a delay of reimbursement.

FWO filed an original petition and application for a temporary restraining order ("TRO") on July 29, 2011 against the Water District. It alleged that the District had breached its contract with FWO, damaging it to the extent of up to three years interest, or a maximum of almost $250,000.00. FWO sought specific performance of the contract in the form of permanent injunctive relief compelling the Water District to "use its best efforts to apply to amend the Commission's bond order to include the additional interest owed to FWO." It further sought a TRO enjoining the Water District from issuing the bonds until the District used its best efforts to obtain an amendment to the bond issuance order to include the maximum amount of interest owed to FWO under Commission rules.

5

In response to FWO's application for a TRO, the District successfully obtained a declaratory judgment in a Travis County district court, pursuant to section 1205.061(a) of the Texas Government Code. This declaratory judgment authorized the Water District to issue the bonds, declared both the bonds and the proceedings for issuing them legal and valid, and permanently enjoined "institution or prosecution by any person or entity of any new or existing action or proceeding contesting the legality and validity of the Bonds. . . ."

FWO filed an amended petition on September 23, 2011, abandoning its request for a TRO and injunctive relief, and modifying its breach of contract claim. In its live pleadings, it alleged that the Water District had breached its contract with FWO by failing to use its best efforts to apply for bonds providing the maximum amount of interest reimbursement to which FWO was entitled under the Commission's rules. It sought damages for this breach in the amount of up to three years of interest owed to it under the contract, or a maximum of $248,946.67, plus pre- and post-judgment interest and costs.

The Water District issued and sold the bonds in August 2011. In late September 2011, it prepared a conveyance and release for FWO's facilities and forwarded them to FWO for execution. The Water District also sent FWO a document entitled "Receipt of Bond Proceeds," which provided as follows:

> FWO DEVELOPMENT, LTD., a Texas limited partnership, (the "Developer"), does hereby acknowledge receipt of the sum of $_____ from the proceeds of the sale of the $8,630,000 Harris County Fresh Water Supply District No. 61 Unlimited Tax Bonds, Series 2011 (the "Series 2011 Bonds"), which amount represents payment of all reimbursable amounts due to Developer under the Water, Sewer and Drainage Improvement Financing and Construction Contract by and between Harris County Fresh Water Supply District No. 61 and FWO DEVELOPMENT, LTD. a Texas limited partnership, dated July 20, 2005 (the "Contract").

Further, the undersigned Developer hereby warrants and represents that Developer is due such sums and agrees to indemnify and hold harmless District, its Directors, and representatives from any and all liability with respect to any further reimbursement under the Contract. District shall have no duly or obligation to pay any further sums to Developer.

FWO responded by stating that the documents provided by the Water District attempted to extinguish its lawsuit and claims for additional interest and that the contract did not require a "receipt." FWO returned both an executed modified Conveyance and Receipt, which covered all matters not disputed by the parties, and expressly carved out the additional interest being sought by FWO in the pending litigation. The Water District replied that the proceeds from the bond sale would be available to FWO only when the original forms of the documents were signed by FWO and delivered to the District.

On September 29, 2011, the Water District emailed FWO a "Formal Tender," in which it stated:

> The District formally tenders the sum of $1,210,194.07 and requests that FWO accept that amount and sign the documents Sara Anderson [counsel for the District] prepared [and sent on September 22]. Without such acceptance and signing, the District cannot, under the law, deliver the check to FWO.
>
> If FWO refuses to accept and sign, then it must forego receipt of the funds until it accepts and signs or obtains a judgment for more than such sum. The District's tender relieves it of any obligation to pay any interest on the tendered amount.

FWO replied that it had provided signed documents to the Water District covering the full undisputed sum, yet the District had refused to pay FWO what it admittedly owed. FWO stated that the Water District should consider its response a demand that the District pay FWO $1,210,194.07 in reimbursement of the principal and first two years interest owed from the bond proceeds.

7

In January 2012, FWO supplemented its petition to add an additional breach of contract claim, asserting that FWO had complied with the contract and met all conditions precedent for payment, but the Water District had breached the contract by refusing to pay FWO the undisputed principal and first two years' interest approved by the Commission, for which the District had sold bonds and received proceeds. FWO sought damages in the amount of $1,210,194.07, plus pre- and post-judgment interest and costs for this breach.

On April 3, 2012, the Water District filed a motion for summary judgment, in which it raised two jurisdictional issues. FWO responded to the Water District's summary-judgment motion on April 20. The trial court denied the District's motion on May 8, 2012. This accelerated appeal, in which only the jurisdictional issues are challenged, was timely filed thereafter on May 18, 2011.[5]

## SUBJECT-MATTER JURISDICTION

The Water District challenges the trial court's subject-matter jurisdiction in two issues. First, it asserts that FWO failed to exhaust its administrative remedies prior to filing suit. Second, the District contends that Texas law vests the Commission with exclusive jurisdiction to decide issues such as the amount of reimbursable interest to developers like FWO.

The Water District's two issues are intertwined: as is applicable here, a party is required to exhaust administrative remedies only when the legislature has vested exclusive jurisdiction in an agency to make an initial determination in a dispute. *See Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006). Thus, we address these issues together and consider whether the Commission has the authority to

---

[5] Regardless of the procedural vehicle, the legislature has provided for an accelerated interlocutory appeal when a trial court denies a governmental unit's challenge to subject-matter jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8); *see also Thomas v. Long*, 207 S.W.3d 334, 339–40 (Tex. 2006).

make an initial determination in a breach of contract dispute between a municipal utility district and a developer.

## A. Standard of Review and Governing Law

Whether the Commission has exclusive jurisdiction over this dispute is a question of law that we review de novo. *Id.* A district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8. District courts are courts of general jurisdiction and generally have subject matter jurisdiction absent a showing to the contrary. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000).

In contrast, administrative bodies may exercise only those powers the law confers upon them in clear and express statutory language and those reasonably necessary to fulfill a function or perform a duty that the legislature has expressly placed with the agency. *Thomas*, 207 S.W.3d at 340. When the legislature grants an administrative body the sole authority to make an initial determination in a dispute, that agency has exclusive jurisdiction over the dispute. *Id.* If an agency has exclusive jurisdiction, a trial court lacks subject matter jurisdiction and must dismiss any claim within the agency's jurisdiction until that party has exhausted all administrative remedies. *Id.*; *see also United Residential Props., L.P. v. Thies*, 378 S.W.3d 552, 560 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Whether an agency has exclusive jurisdiction depends on statutory construction. *See Thomas*, 207 S.W.3d at 340. Here, there is no express indication of exclusive jurisdiction. Thus, we look to the relevant legislative scheme to

determine if the legislature granted the Commission the sole authority to make an initial determination in this dispute. *Id.*

## B. Analysis

The legislature has tasked the Commission with the primary responsibility for implementing the State's public policy of conserving natural resources. *See* Tex. Water Code § 5.012. The Commission has continuing supervisory authority over fresh water districts, including the Water District. *See id.* § 5.013 (a)(2) (providing the Commission with general jurisdiction over the continuing supervision over districts created under article XVI, section 59(a) of the Texas Constitution); *id.* § 54.024 (stating that rights, privileges, authority, and functions of a utility district, including a fresh water district, are subject to the continuing right of supervision by the State through the Commission). As is relevant here, the Commission's continuing right of supervision of the Water District includes, but is not limited to, the authority to:

  (1)  inquire into the competence, fitness, and reputation of the officers and directors of any district or authority;

  (2)  require, on its own motion or on complaint by any person, audits, or other financial information, inspections, evaluations, and engineering reports;

  (3)  issue subpoenas for witnesses to carry out its authority under this subsection;

  (4)  institute investigations and hearings; [and]

  (5)  issue rules necessary to supervise the districts and authorities . . . .

*Id.* § 293.3

The Commission has the authority to perform acts specifically authorized or implied by the Texas Water Code or other law that are "necessary and convenient to the exercise of its jurisdiction and powers" provided by the Water Code and

10

other laws. *Id.* § 5.102(a). To that end, the Legislature has vested the Commission with rule making authority. *Id.* § 5.103. The purpose of the Commission's rules "is to implement the powers and duties of the commission under the Texas Water Code, the Texas Health and Safety Code, and other laws, to establish the general policies of the commission, and to set forth procedures to be followed in agency proceedings." *See* 30 Tex. Admin. Code § 1.1 (Tex. Comm'n on Envtl. Quality, Purpose of Rules, General Provisions).

Chapter 293 of Title 30 of the Texas Administrative Code contains the Commission's rules specifically regarding water districts. *See id.* §§ 293.1–.365 (Tex. Comm'n on Envtl. Quality, Water Dists.). However, "[n]othing in this chapter shall be construed to relieve a district of its legal duties, obligations, or liabilities relative to its responsibilities as defined in the Texas Water Code." *Id.* § 293.2. As is relevant here, under the Texas Water Code,

> [a] district is authorized to purchase, construct, acquire, own, operate, maintain, repair, improve, or extend inside and outside its boundaries any and all works, improvements, facilities, plants, equipment, and appliances necessary to accomplish the purposes of the district authorized by the constitution, this code, or other law, including all works, improvements, facilities, plants, equipment, and appliances incident, helpful, or necessary to . . . supply water for municipal uses, domestic uses, power, and commercial purposes and all other beneficial uses or controls . . . .

Tex. Water Code § 54.201.[6]

Numerous Commission rules govern the issuance of bonds, including the Commission's approval of projects relating to the issuance and sale of bonds,[7]

---

[6] This statutory provision provides the authority for the Water District's contract with FWO.

[7] The Commission's approval of FWO's project came well after the District had contracted with FWO. Our record reflects that the District entered into the subject contract in 2005 and submitted its application to the Commission for project approval and bond issuance in

11

submission of district applications for bonds to the Commission, bond application requirements, and rules for developer interest reimbursement. *See* 30 Tex. Admin. Code §§ 293.41, .42, .43, 50. The rules for developer interest reimbursement provide that a developer may be reimbursed by a district for up to two years of accrued interest, or *if requested by a district*, for up to five years if the Commission deems the extra reimbursement feasible and certain other conditions are met. *See id.* § 293.50.

There is an appeal process defined in the rules: "A person aggrieved by a decision of a board of directors of a Municipal Utility District operating under the Water Code, Chapter 54 may appeal a decision that involves the cost, purchase, or use of improvements constructed by a developer for the district to the commission." *Id.* § 293.180. Similarly, the Texas Water Code provides, "A person aggrieved by a decision of a board involving the cost, purchase, or use of facilities may appeal the decision to the Commission by filing a petition with the Commission seeking appropriate relief within 30 days after the date of the decision." Tex. Water Code § 54.239.[8]

---

2009.

[8] The District cites several cases for the proposition that the use of "may" in this type of appeal provision means that an appeal *must* be taken. The cases cited by the Water District in which the permissive "may" is used to describe a mandatory administrative appeal involve situations in which the grievance or dispute at issue falls within the scope of the agency's or administrative body's review powers. *See, e.g.*, *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 487-88 (Tex. 1991), *overruled on other grounds*, *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299 (Tex. 2010) (explaining that Commission on Human Rights Act created a comprehensive administrative review system under which the plaintiff's unlawful employment grievance fell); *Jones v. Clarksville Indep. Sch. Dist.*, 46 S.W.3d 467, 470–71 (Tex. App.—Texarkana 2001, no pet.) ("[D]espite the seemingly clear [permissive] language of the [appeal] statute, it has historically been explained as actually meaning that an aggrieved person may appeal, and *if* an appeal is taken, it *must* be to the commissioner [of education] *if the matter is one within the scope of the agency's review powers*." (third emphasis ours)). As discussed above, administrative bodies may exercise only those powers that the law confers upon them in clear and express statutory language and those reasonably necessary to fulfill a function or

12

However, the Water District has not directed us to, nor has our research revealed, any Commission rule requiring the Commission to make an initial determination regarding a contract dispute between a district and a developer. *See Thomas*, 207 S.W.3d at 340. FWO sued the District for breaching their contract—specifically, for failing to use its best efforts to apply for or obtain the maximum reimbursable share for FWO permissible under the Commission's rules and for failing to pay FWO even though all conditions precedent to payment had been met. As noted above, the Commission only has those powers conferred on it by clear and express statutory language or implied powers reasonably necessary to fulfill a function or perform a duty the legislature has expressly placed with it. *Thomas*, 207 S.W.3d at 340. Our review of the relevant statutory scheme does not indicate that the legislature has expressly conferred on the Commission the power or duty to determine whether the Water District breached its contract with FWO. Indeed, the Commission's rules explicitly provide that they *shall not be construed* to relieve a district of its legal duties, obligations, or liabilities relative to its responsibilities as defined in the Texas Water Code. 30 Tex. Admin. Code § 293.2.

We conclude that the Commission has not been vested with exclusive jurisdiction to determine this contract dispute, and FWO was not required to exhaust its administrative remedies before filing suit. Accordingly, we overrule the District's challenges to the trial court's subject-matter jurisdiction.

---

perform a duty that the legislature has expressly placed with the agency. *Thomas*, 207 S.W.3d at 340. As discussed *supra*, the District has not cited, nor have we found, anything indicating that contract disputes between districts and developers fall within the Commission's review powers.

## CONCLUSION

For the foregoing reasons, we overrule the Water District's issues and affirm the trial court's order denying the jurisdictional issues raised in the District's summary-judgment motion.


           /s/           Adele Hedges
                       Chief Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.