AFFIRM, Opinion issued November 30, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-11-00341-CV

## WILLIAM C. JARVIS AND CINDY JARVIS, Appellants

V.

## K&E RE ONE, LLC, STEWART TITLE COMPANY, AND BAYVIEW LOAN SERVICING, Appellees

On Appeal from the 162nd Judicial District Court
Dallas County, Texas
Trial Court Cause No. 10-00947-I

# OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion By Justice Fillmore

William C. Jarvis and Cindy Jarvis appeal (1) the trial court's judgment granting K&E Re

One, LLC (K&E) declaratory and injunctive relief and awarding K&E attorney's fees, and (2) the

trial court's grant of summary judgment in favor of Stewart Title Company (Stewart Title) and

Bayview Loan Servicing (Bayview). In four points of error, the Jarvises contend the trial court erred

by (1) denying their motion to exclude evidence, (2) finding North American Capital (NAC) had the

authority to act as agent for the Jarvises, (3) granting summary judgment in favor of Stewart Title

and Bayview, and (4) awarding K&E attorney's fees. We affirm the trial court's judgment.

## Factual Background

In the summer of 2007, Gena Lofton purchased a fourteen-unit apartment complex in Dallas, Texas (the Property). Lofton contacted NAC to obtain financing for the purchase. NAC is in the business of facilitating short-term real estate loans between private mortgage investors and real estate purchasers for the acquisition and rehabilitation of commercial and residential property.

As part of its loan facilitation services, NAC is involved prior to a loan being funded in performing due diligence as to the borrower and the property being purchased. After a loan closes, NAC collects the monthly payments from the borrower and forwards the payments to the lender. NAC keeps records of any late payment and notifies the borrower of the necessity to pay a late fee. NAC may also be involved in contacting counsel about foreclosing on a piece of property or about representing the lender in a bankruptcy proceeding.

NAC contacted the Jarvises, and they agreed to provide the funding for the Lofton loan. Lofton understood that NAC was operating as a servicer for the Jarvises. Lofton was not provided with any contact information for the Jarvises and had no direct contact with them during the loan application process. In connection with closing the loan, Lofton signed a number of documents, including a promissory note (the Note); a deed of trust (DOT); a business purpose affidavit; an assignment of leases, deposits and rents (the Assignment); an environmental indemnification statement; and a legal representation agreement. The Note, the business purpose affidavit, the legal representation agreement, and the environmental indemnification agreement all reference NAC as the "servicer." The DOT names the Jarvises as the beneficiaries "c/o" NAC. The Assignment identifies the lender as the Jarvises "c/o" NAC. The settlement agreement signed at the time Lofton purchased the Property indicates NAC received a loan origination fee and a processing fee. It also shows that, after the closing, NAC held $28,100 of the loan proceeds in escrow and also held an

additional $6,270.41 of the loan proceeds. According to Lofton, the $28,100 held in escrow was for construction work on the Property. Lofton could not recall why NAC held the remaining $6,270.41.

Lofton transferred title to the Property to Capital Asset Solutions, LLC (CAS), an entity controlled by Lofton. Pursuant to the terms of the Note, Lofton made payments every month to the Jarvises at the offices of NAC. The Note did not restrict the form of payment, and Lofton did not receive any instructions from either the Jarvises or NAC about the form of payment. Lofton made the monthly payments by check written on the account of CAS.

In the spring of 2008, CAS agreed to sell the Property to K&E. Stewart Title was retained to handle the closing. Adam Rachavong, a closing agent with Stewart Title, reviewed the DOT, the Assignment, and the UCC financing statement filed by the Jarvises and saw no contact information for the Jarvises. Because Lofton believed NAC was the servicer on the loan and it is customary for the servicer to prepare a payoff request on a loan, she told Rachavong to contact NAC. According to Rachavong, he "didn't know for sure" if the "c/o" in the documents he reviewed gave NAC authority to accept funds on behalf of the Jarvises. However, in Rachavong's opinion, "c/o" meant all correspondence or matters regarding the loan should be directed to NAC.

Rachavong contacted Mark Cleaton, NAC's president, and Cleaton provided a loan payoff amount. Cleaton also provided Rachavong with instructions on how to wire the loan payoff funds to NAC's account. The funds to pay off the Note were wired to NAC in April 2008 following the closing of the sale of the Property to K&E. Lofton testified she was not alarmed when the settlement statement for the closing indicated the funds would be sent to NAC, because it is customary for a servicer to collect the proceeds from a sale and distribute them to the lender. In Rachavong's opinion, the wire transfer to NAC was consistent with the beneficiary information in the DOT. William Jarvis, however, denied the Jarvises gave NAC the authority to accept payments from

borrowers or subsequent purchasers on their behalf. Cleaton also denied NAC had authority to accept payments as a payee under the Note.

NAC did not disburse the loan payoff funds to the Jarvises. Rather, NAC began sending monthly checks written on its operating account to the Jarvises purporting to be payments on the Note. The Jarvises deposited these checks and did not complain that the payments came from NAC, rather than from Lofton. NAC stopped making the monthly payments in November 2008. In November 2009, William Jarvis contacted Lofton and learned the Property had been sold and the funds to pay off the loan had been wired to NAC. On November 14, 2009, the Jarvises informed Cleaton that NAC "was no longer authorized to act as a servicing agent on [their] behalf." On January 11, 2010, the Jarvises posted the Property for foreclosure.

## Procedural Background

K&E filed this suit, seeking a declaration the Note had been paid and the DOT had been discharged and no longer constitutes a valid and subsisting lien on the Property. K&E also requested the Jarvises be permanently enjoined from attempting to foreclose on the Property, taking possession and control of the Property, or otherwise attempting to extinguish K&E's interest in the Property. The Jarvises filed a third-party petition against Stewart Title, CAS, OneWest Bank Group, LLC, and Bayview.[1] The Jarvises asserted a negligence claim against CAS. They also alleged (1) Stewart Title had been negligent by failing to pay the Jarvises the loan payoff funds, and (2) they were third-party beneficiaries of the escrow agreement relating to the sale contract between CAS and K&E and Stewart Title breached the escrow agreement by failing to properly account for and distribute the funds from the transaction. The Jarvises also requested a declaratory judgment against Stewart Title

---

[1] OneWest loaned the funds to K&E to purchase the Property and held a deed of trust on the Property. Bayview was the servicing agent on the loan to K&E.

-4-

that the Note and the DOT dictate payment was to be made to the Jarvises, Stewart Title was obligated to pay the Jarvises, Stewart Title failed to pay the Jarvises, and the DOT had not been discharged. The Jarvises sought the equitable remedy of quiet title against OneWest and Bayview and requested a declaratory judgment that the deed of trust executed in favor of OneWest and Bayview was inferior to the DOT. The parties agreed to try K&E's claims against the Jarvises first.

The Jarvises moved to exclude evidence of loans, other than the Lofton loan, that were originated by NAC in which the Jarvises participated. The Jarvises argued the DOT, the Note, and the UCC financing statement pertaining to the Lofton loan were unambiguous and governed the parties' relationship and, therefore, the parol evidence rule barred the admission of evidence of NAC's and the Jarvises' conduct relating to other loans. K&E responded that evidence of the Jarvises' and NAC's conduct on other loans was relevant to establishing the extent of NAC's authority to act on behalf of the Jarvises on the Note.

The trial court denied the Jarvises' motion to exclude evidence. During trial, K&E offered evidence that, of the ten loans the Jarvises participated in with NAC, three of the loans, including the Lofton loan, were paid off. The other two loans were paid off prior to the closing of the sale between Lofton and K&E. On both occasions, the loan payoff funds were paid directly to NAC, and NAC disbursed the funds to the Jarvises. The Jarvises accepted the payments directly from NAC and did not assert on either occasion that NAC lacked authority to receive loan payoff funds on their behalf.

Following a bench trial, the trial court entered judgment for K&E. The trial court declared the Note had been fully paid and the DOT had been discharged and no longer constitutes a valid and subsisting lien on the Property. It also enjoined the Jarvises from foreclosing, or attempting to foreclose, on the DOT or from otherwise interfering, or attempting to interfere, with K&E's

possession and use of the Property. The trial court awarded K&E $74,344.50 for attorney's fees in the trial court and contingent attorney's fees for an unsuccessful appeal by the Jarvises.

In its findings of fact and conclusions of law, the trial court found the Jarvises and NAC, through their course of conduct, established a usual, customary, and authorized procedure pursuant to which NAC directly received the funds to pay off a loan and then disbursed those funds to the Jarvises through a check drawn on NAC's operating account. It found NAC had actual authority and actual implied authority to accept and receive the loan payoff on the Note on behalf of the Jarvises. In addition, it found the Jarvises, knowingly and by lack of ordinary care, permitted NAC to hold itself out as having authority to receive the funds, clothed NAC with the indicia of authority to receive the funds, and placed NAC in such a position as to lead Lofton to believe NAC had authority to accept the funds. The trial court concluded that NAC had actual, implied, and apparent authority to accept and receive the funds to pay off the Note.

Bayview and K&E moved for summary judgment on the ground the trial court's findings of fact precluded the Jarvises from recovering on their third-party claims against Bayview. Stewart Title also filed a motion for summary judgment and a supplemental motion for summary judgment[2] on the Jarvises' (1) negligence claim on grounds it did not owe a duty to the Jarvises and, based on the trial court's findings NAC was the Jarvises' agent with authority to receive the loan payoff funds, it had not breached any duty to the Jarvises by delivering the funds to NAC; (2) breach of contract claim on grounds the Jarvises were not third-party beneficiaries of the escrow agreement relating to the sales contract between CAS and K&E and, based on the trial court's findings that NAC had authority to receive the loan payoff funds, Stewart Title did not breach the escrow agreement; and

---

[2] The Jarvises originally asserted a negligence claim and requested declaratory relief against Stewart Title. After Stewart Title filed its motion for summary judgment, the Jarvises filed an amended petition asserting a claim for breach of contract. Stewart Title's supplemental motion for summary judgment addressed the breach of contract claim.

(3) request for declaratory relief because Stewart Title was not a party to the DOT and did not have a controversy with the Jarvises other than the non-viable negligence claim. The trial court granted the motions for summary judgment and severed the Jarvises' claims against CAS into a separate cause of action. The Jarvises dismissed their claims against OneWest, causing the judgments in favor of K&E, Stewart Title, and Bayview to become final.

## Motion to Exclude

In their first issue, the Jarvises contend the trial court erred by denying the motion to exclude evidence. The Jarvises specifically assert the loan documents reviewed by Rachavong are unambiguous and dictate the nature and extent of the relationship between the Jarvises and NAC and, therefore, the parol evidence rule precludes the admission of evidence to vary the terms of those documents.

The applicability of the parol evidence rule is a question of law that we review de novo. *Audubon Indem. Co. v. Custom Site-Prep, Inc.*, 358 S.W.3d 309, 316 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The parol evidence rule is not a rule of evidence, but a rule of substantive contract law. *Hubacek v. Ennis State Bank*, 159 Tex. 166, 169, 317 S.W.2d 30, 31 (1958); *Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 796 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam). However, "parol evidence can be used to demonstrate a prior or contemporaneous agreement that is both collateral to and consistent with a binding agreement, and that does not vary or contradict the agreement's express or implied terms or obligations." *Id.* at 451 (citing *Hubacek*, 317 S.W.2d at 31); *see also ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 875 (Tex.

2010); *Haden*, 266 S.W.3d at 451. "A collateral agreement between parties concerning the relationship of several distinct obligations between them falls" within the collateral and consistent exception to the parol evidence rule. *Swinnea*, 318 S.W.3d at 875.

The Jarvises argue the DOT, the Assignment, and the UCC financing statement reviewed by Ravachong identified the Jarvises as the beneficiaries, the lender, or the secured parties, did not identify NAC as the "servicer," and unambiguously required Ravachong to forward payment to the Jarvises in care of NAC. However, the documents reviewed by Ravachong stated all contact with the Jarvises was to be "c/o" NAC. Further, other documents relating to the Lofton loan, although not reviewed by Ravachong, refer to NAC as the "servicer" on the loan.

The loan documents clearly indicated NAC had authority to act on behalf of the Jarvises. However, although the loan documents established that NAC had authority to accept payments on behalf of the Jarvises, the documents did not define the extent of NAC's duties and authority under the term "servicer" or in relation to the term "c/o." Evidence of a collateral agreement between NAC and the Jarvises regarding the scope of NAC's authority under either of the undefined terms "servicer" or "c/o" did not vary or contradict any of the express or implied terms or obligations set out in the documents relating to the Lofton loan. Accordingly, the parol evidence rule did not bar evidence of the Jarvises' and NAC's conduct on other loans, and the trial court did not err by overruling the Jarvises' motion to exclude evidence. We resolve the Jarvises' first point of error against them.

### NAC's Authority

In their second point of error, the Jarvises argue the trial court erred by granting the permanent injunction because NAC did not have authority to act as agent for the Jarvises and, even if NAC did have some authority to act for the Jarvises, it exceeded that authority when it accepted

the loan payoff funds. We construe this argument as a challenge to the sufficiency of the evidence to support the trial court's findings that NAC had authority to accept the loan payoff funds on behalf of the Jarvises.

The question of agency is usually a fact issue. *Park Cities Ltd. P'ship v. Transpo Funding Corp.*, 131 S.W.3d 654, 660 (Tex. App.—Dallas 2004, pet. denied). Because an agency relationship cannot be presumed, the party who alleges agency has the burden of proving it. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007) (per curiam). K&E alleged NAC was the Jarvises' agent and, therefore, had the burden of proof on the issue.

In conducting a legal and factual sufficiency review of the evidence to support a trial court's findings of fact and conclusions of law, we apply the same standards used in reviewing the evidence supporting a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). An appellant attacking the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof must demonstrate there is no evidence to support the trial court's adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 830 (Tex. App.—Dallas 2011, no pet.). When examining a legal sufficiency challenge to a finding of fact, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Evidence is legally sufficient if it rises to a level that would enable a reasonable and fair-minded fact finder to make the finding. *Id.* at 827. A legal sufficiency challenge fails if there is more than a scintilla of evidence to support the finding. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006); *Affordable Power, L.P.*, 347 S.W.3d at 830. "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists.'" *Suberu*, 216 S.W.3d at 793 (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601

(Tex. 2004)); *see also Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011) (if evidence does no more than give rise to mere surmise or suspicion, then it is no evidence).

In a factual sufficiency review of a finding, we consider and weigh all the evidence, both in support of and contrary to the challenged finding. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam). When a party challenges the factual sufficiency of the evidence supporting an adverse finding on which it did not have the burden of proof, we set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Figueroa v. Davis*, 318 S.W.3d 53, 59 (Tex. App.—Houston [1st Dist.] 2010, no pet.). We may not substitute our judgment for that of the trier of fact or pass on the credibility of the witnesses. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

"An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). Absent actual or apparent authority, an agent cannot bind a principal. *CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 899 (Tex. App.—Dallas 2007, pet. denied) (op. on reh'g).

Actual authority is authority a principal (1) intentionally confers upon on agent (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses. *Affordable Power*, 347 S.W.3d at 832; *United Residential Properties, L.P. v. Theis*, 378 S.W.3d 552, 564 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Actual authority is created through "written or spoken words or conduct of the principal communicated to the agent." *CNOOC Se. Asia Ltd.*, 222 S.W.3d 889 at 899; *Theis*, 378 S.W.3d at 564. The existence of an agency relationship based on actual authority may be implied from the conduct of the parties or from

the facts and circumstances surrounding the transaction in question, but cannot be based merely on the words or deeds of the agent. *CNNOC Se. Asia Ltd.*, 222 S.W.3d at 899.

Apparent authority is created by "written or spoken words or conduct by the principal to third parties, not to the agent." *Id.* Apparent authority is based on estoppel, arising "'either from a principal knowingly permitting an agent to hold [himself] out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise.'" *Gaines*, 235 S.W.3d at 182 (quoting *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998)). Because apparent authority is based on estoppel, the principal's conduct must be that which would lead a reasonably prudent person to believe that authority exists. *Id.* at 182–83. In determining an agent's apparent authority, a fact finder considers only the conduct by the principal that would lead a third party to believe the agent had apparent authority and the reasonableness of the third party's assumptions about authority. *Id.* at 183.

Payment to an authorized agent of the obligee constitutes payment to the principal. *Cash v. Lebowitz*, 734 S.W.2d 396, 399 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). This is true even if the agent appropriates the money to his own use. *MacMichael LLC v. Packaging Corp. of Am.*, No. 05-08-00561-CV, 2009 WL 1959247, at *3 (Tex. App.—Dallas July 9, 2009, no pet.) (mem. op.); *Cash*, 734 S.W.2d at 399 (any damage resulting from agent's faithlessness and chicanery must be borne by principal).

We turn first to whether there is sufficient evidence to support the trial court's finding NAC had actual authority to accept the loan payoff funds. Relying heavily on the testimony of William Jarvis and Cleaton, the Jarvises assert that, after a loan closed, NAC was authorized to act only as a contact point to forward loan payments and did not have authority to accept the payoff funds on

the Note for the Jarvises. However, it was undisputed that NAC had authority to perform a number of functions for lenders, including the Jarvises, after a loan closed. Not only did NAC collect and forward loan payments to lenders, it calculated when a late penalty was due and contacted the borrower about the penalty. It held construction funds in escrow while the Property was being rehabilitated. When necessary, it was involved in retaining counsel to foreclose on a piece of property or to represent the lender if a borrower filed for bankruptcy. Further, after discovering the Property had been sold, the Jarvises terminated NAC's authority to act on their behalf. The evidence established that NAC had some actual authority to act for the Jarvises following the closing of the Lofton loan. The issue is whether NAC's authority included the ability to accept loan payoff funds on behalf of the Jarvises.

An agency relationship may be implied from the conduct of the parties. *CNOOC Se. Asia Ltd.*, 222 S.W.3d at 899; *Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889, 896 (Tex. App.—Dallas 2003, no pet.). Further, both the agency and the extent of the agent's authority may be proved by circumstantial evidence. *Found. Reserve Ins. Co. v. Wesson*, 447 S.W.2d 436, 438 (Tex. Civ. App.—Dallas 1969, writ ref'd); *Townsend v. Univ. Hosp.-Univ. of Colorado*, 83 S.W.3d 913, 921 (Tex. App.—Texarkana 2002, pet. denied). In this case, only three loans in which the Jarvises participated with NAC, including the Lofton loan, were paid off. In the two loans paid off prior to the Lofton loan, NAC provided a loan payoff amount to the closing company. The closing company forwarded payment to NAC, and NAC paid the Jarvises and other lenders the proceeds by check written on NAC's operating account. The Jarvises accepted these payments without protesting that NAC was not authorized to receive loan payoffs on their behalf.

We conclude there is more than a scintilla of evidence that NAC had implied actual authority to accept the loan payoff funds on behalf of the Jarvises. *See Aquaduct LLC v. McElhenie*, 116

S.W.3d 438, 442–43 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (servicing agent on loan had implied actual authority to collect full payment of outstanding balances on behalf of lienholder). We further conclude the evidence supporting the trial court's finding that NAC had implied actual authority to accept the loan payoff funds on behalf of the Jarvises was not so weak as to make the finding clearly wrong and manifestly unjust. We, therefore, need not address whether the evidence is sufficient to support the trial court's finding that NAC also had apparent authority to accept the loan payoff funds on behalf of the Jarvises. *See* TEX. R. APP. P. 47.1. We resolve the Jarvises second point of error against them.

### Summary Judgment

In their third point of error, the Jarvises assert the trial court erred by granting summary judgment for Bayview and Stewart Title. We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A summary judgment under rule of civil procedure 166a(c) is properly granted when the movant establishes that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 373 (Tex. App.—Dallas 2011, no pet.). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

We turn first to the Jarvises' contention the trial court erred by granting summary judgment on the Jarvises' negligence and breach of contract claims against Stewart Title. The Jarvises assert the trial court erred by granting summary judgment on the negligence claim because Stewart Title, as the escrow agent, had the duty to transfer the loan payoff funds to the Jarvises and breached that

duty by failing to do so. The Jarvises also argue the trial court erred by granting summary judgment on the breach of contract claim because they were the third-party beneficiaries of the escrow agreement relating to the sales contract between CAS and K&E, and Stewart Title breached the escrow agreement by failing to deliver the proceeds as required by the agreement.

We have concluded there is sufficient evidence to support the trial court's determination NAC had implied actual authority to accept loan payoff funds on behalf of the Jarvises. Stewart Title transferred the funds to NAC, constituting payment to the Jarvises. *See Cash*, 734 S.W.2d at 399. Therefore, Stewart Title breached neither a common law duty to the Jarvises nor the escrow agreement relating to the CAS and K&E sales agreement by failing to deliver the funds to the Jarvises.[3] We conclude the trial court did not err by granting Stewart Title summary judgment on the Jarvises' negligence and breach of contract claims.

The Jarvises also assert the trial court erred by granting summary judgment on the Jarvises' claim against Bayview to quiet title and against Bayview and Stewart Title for declaratory relief that the DOT had not been discharged. The payment of a debt discharges the lien securing it without any release from the lienholder. *Perkins v. Sterne*, 23 Tex. 561, 563 (1859); *Green v. Am. Nat'l Ins. Co.*, 452 S.W.2d 1, 4 (Tex. Civ. App.—San Antonio 1970, no writ). When Stewart Title forwarded the loan payoff funds to NAC, the Jarvises' agent with authority to accept the funds, the lien on the property was extinguished and the DOT was discharged. Accordingly, the trial court did not err by granting summary judgment on the Jarvises' claims against Bayview to quiet title and for declaratory relief against both Bayview and Stewart Title. We resolve the Jarvises' third issue against them.

---

[3] Accordingly, we need not decide whether an escrow agent owes a duty to a non-party to the underlying contract or whether the Jarvises were third-party beneficiaries of the escrow agreement. *See* TEX. R. APP. P. 47.1.

## Attorney's Fees

In their fourth issue the Jarvises argue the trial court erred by awarding K&E attorney's fees under the Uniform Declaratory Judgment Act (UDJA). We will not reverse the trial court's decision granting attorney's fees in a declaratory judgment action absent a clear showing of an abuse of discretion. *Max Duncan Family Invs., Ltd. v. NFTN Inc.*, 267 S.W.3d 447, 454 (Tex. App.—Dallas 2008, pet. denied).

The Jarvises first contend the trial court's award of attorney's fees to K&E was improper and without foundation because the "cause of action and relief sought by" K&E was in the nature of a quiet title lawsuit, not a declaratory judgment action, and attorney's fees are not available in an action to quiet title. However, K&E initiated this action requesting injunctive relief to prevent foreclosure, declarations the Note had been fully paid and the DOT had been discharged and no longer constitutes and valid and subsisting lien on the Property, and costs and attorney's fees. The UDJA permits a party to bring a declaratory judgment action to invalidate a real estate note, as well as any lien securing the note. *Id.* at 453; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2008); *I-10 Colony, Inc. v. Lee*, No. 14-10-01051-CV, 2012 WL 4355534, at *4–5 (Tex. App.—Houston [14th Dist.] Sept. 25, 2012, no pet. h.). It also provides that, in any proceeding under the UDJA, a trial court may award costs and reasonable attorney's fees as are equitable and just. *Max Duncan Family Invs., Ltd.*, 267 S.W.3d at 453; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008).

The action initiated by K&E involves more than title and possession of real property; the action concerns the validity of a real estate note. Therefore, K&E could bring its claim under the UDJA and could properly recover costs and attorney's fees. *See Max Duncan Family Invs., Ltd.*, 267 S.W.3d at 454; *Guniganti v. Kalvakuntla*, 346 S.W.3d 242, 252–53 (Tex. App.—Houston [14th

Dist.] 2011, no pet.). We cannot conclude the trial court abused its discretion by awarding K&E attorney's fees.

The Jarvises next complain that there was "a lack of proper evidentiary foundation" to support the award of attorney's fees for the time a legal assistant, Cheryl Moseley, worked on the case. An award of attorney's fees may include a legal assistant's time to the extent the work performed has traditionally been done by an attorney. *Gill Sav. Ass'n v. Int'l Supply Co., Inc.*, 759 S.W.2d 697, 702 (Tex. App.—Dallas 1988, writ denied). To recover fees for a legal assistant's work, the evidence must show the (1) legal assistant is qualified through education, training, or work experience to perform substantive legal work; (2) substantive legal work was performed under the direction and supervision of an attorney; (3) nature of the legal work performed; (4) hourly rate being charged for the legal assistant; and (5) number of hours expended by the legal assistant. *Id.; see also El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012). The Jarvises argue K&E failed to establish Moseley's qualifications through their expert's direct testimony, and the trial court erred by allowing testimony about Moseley's qualifications during redirect examination.

Arthur Selander, K&E's attorney, testified as to K&E's attorney's fees. As relevant to this appeal, Selander testified in his direct examination about the work his law firm had performed on the case and that Moseley had worked on the case "throughout all the matters" described by Selander. The Jarvises' attorney cross-examined Selander about his billing statements and whether Stewart Title was paying K&E's attorney's fees. Selander also testified about whether fees relating to certain activities and to the third-party claims had been segregated.

On redirect examination, Selander testified about the additional time he and Moseley had expended following the first two days of trial. He then testified that Moseley had twenty-six years' experience in the legal field as a legal secretary and a legal assistant. She was certified as a

professional legal secretary in 1991 and as a legal assistant in 2003. As Selander began testifying that the services Moseley had performed on the case related to substantive legal work, the Jarvises objected that any testimony relating to Moseley was outside the scope of the cross-examination. The trial court overruled the objection, and Selander testified Moseley's work related to substantive legal matters. The trial court's award of attorney's fees included fees for Moseley's time.

The Jarvises do not assert that Selander's testimony during redirect was insufficient to establish Moseley's qualifications. Rather, they contend the trial court erred by allowing Selander to testify about Moseley's qualifications on redirect when that subject had not been addressed in Selander's direct testimony or on cross-examination. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam). A trial court abuses its discretion if it acts without regard to guiding rules or principles. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). We must affirm the trial court's ruling if the record shows any legitimate basis supporting the ruling. *Id.*

The trial court is required to exercise reasonable control of the mode and order of testimony during a trial. TEX. R. EVID. 611(a). In doing so, the trial court may allow nearly complete freedom to examining counsel to bring out new matters on redirect examination, subject to recross examination. *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 508 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *see also Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 141 (Tex. App.—Texarkana 1994, no writ). Selander's testimony during his redirect examination about Moseley's qualifications was not wholly unrelated to the matters testified about during direct and cross-examination. Further, the Jarvises had the opportunity to cross-examine Selander on Moseley's qualifications, but declined to do so. Accordingly, we cannot say the trial court abused

–17–

its discretion by allowing Selander to testify during his redirect testimony about Moseley's qualifications. *See Thumann*, 226 S.W.3d at 507–08 (trial court did not abuse its discretion by allowing counsel to reopen the evidence in order to testify about counsel's qualifications, trial, appellate experience, and appellate attorney's fees). We resolve the Jarvises' fourth point of error against them.

We affirm the trial court's judgment.

_____
ROBERT M. FILLMORE
JUSTICE

110341F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WILLIAM C. JARVIS AND CINDY
JARVIS, Appellants

No. 05-11-00341-CV          V.

K&E RE ONE, LLC, STEWART TITLE
COMPANY, AND BAYVIEW LOAN
SERVICING, Appellees

Appeal from the 162nd Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
10-00947-I).
Opinion delivered by Justice Fillmore,
Justices Moseley and Myers participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**. It is **ORDERED** that appellees K&E Re One, LLC, Stewart Title Company, and
Bayview Loan Servicing recover their costs of this appeal from appellants William C. Jarvis and
Cindy Jarvis.


Judgment entered November 30, 2012.


                                           ROBERT M. FILLMORE
                                           JUSTICE