**REVERSE and REMAND; and Opinion Filed May 20, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-11-00628-CV**

_____

**AMERIPLAN CORPORATION, Appellant**

**V.**

**ANTHONY ANDERSON, Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 07-14089-J**

## MEMORANDUM OPINION

Before Justices FitzGerald, Lang-Miers, and Murphy
Opinion by Justice Lang-Miers

Appellee Anthony Anderson worked as an independent contractor for appellant AmeriPlan Corporation for nine years. After Ameriplan terminated his employment Anderson sued AmeriPlan for claims relating to his compensation. A jury found in favor of Anderson and the trial court rendered judgment against AmeriPlan. AmeriPlan raises three issues on appeal arguing that the evidence is legally insufficient to support the jury's findings and that the award of attorneys' fees was erroneous. We reverse and remand.

### BACKGROUND

**AmeriPlan's Business Model**

The material facts in this case are undisputed. AmeriPlan's customers pay a monthly membership fee in order to access a network of healthcare professionals who have agreed to

provide medical services to AmeriPlan's customers at a set discount. AmeriPlan's business model is based on multilevel direct marketing. It hires independent contractors, also known as "independent business owners" or "IBOs," to recruit its customers, healthcare professionals, and other IBOs. AmeriPlan compensates its IBOs through commissions and bonuses. IBOs earn commissions for each new member that the IBO personally recruits. IBOs who reach the level of sales director may also become a provider representative and earn a one-time commission by recruiting new healthcare professionals to AmeriPlan's network. In addition, once they reach certain levels, IBOs can earn certain bonuses, also known as "overrides" or "builders bonuses," based on the revenues AmeriPlan receives from the sales efforts of IBOs who were recruited directly or indirectly by the IBO, also known as the IBO's "downline."[1]

**Anderson's Introduction to AmeriPlan**

Anderson first learned about AmeriPlan in 1996 through a newspaper advertisement. He met with an IBO who showed him a marketing flip chart that described the position of regional sales director (RSD) as the "Cornerstone of our Compensation Plan." The flip chart described AmeriPlan's compensation system and stated that RSDs receive a "[l]ifetime vested contract" that was "willable and sellable," which Anderson understood to mean that AmeriPlan would continue to pay bonuses to Anderson or his heirs as long as AmeriPlan continued to receive revenues from Anderson's downline. Anderson also attended a sales presentation during which the same marketing materials were shown.

---

[1] For example, quoting from Anderson's appellee's brief,

> [W]hen an IBO achieves the position of National Sales Director, the IBO will earn 15% of the revenues produced by the first generation of Regional Sales Directors ("R[S]Ds") in his sales force (i.e., the R[S]Ds whom he personally recruited to AmeriPlan), 10% of the revenues produced by the second generation of R[S]Ds in his sales force (i.e., R[S]Ds whom his first generation of R[S]Ds recruited to AmeriPlan), 5% of the revenues produced by the third generation of R[S]Ds in his sales force (i.e., R[S]Ds recruited by the R[S]Ds whom his first generation of R[S]Ds recruited to AmeriPlan), 3% from the fourth generation, and 1% from the fifth.

**Anderson's Sales Contract and Tenure with AmeriPlan**

Anderson signed a broker application and agreement and became an AmeriPlan IBO in August 1996. A few weeks later, after recruiting the necessary number of new members and IBOs to reach the level of RSD, Anderson signed AmeriPlan's sales director contract (the sales contract). The sales contract stated that Anderson would receive commissions and bonuses "during the continuation of this Agreement."

Between 1996 and 2005 Anderson rose to the highest IBO position in the company—national sales director—and also became a provider representative. In November 2005, after receiving a complaint letter from a provider, AmeriPlan terminated the sales contract and stopped paying commissions and bonuses to Anderson. Although the issue of whether Anderson was terminated for cause was contested during trial, in this appeal the parties agree that Anderson was not terminated for cause.

**This Lawsuit**

Anderson filed suit against AmeriPlan asserting causes of action for breach of the sales contract, breach of oral contract, fraud, and negligent misrepresentation. The crux of Anderson's complaint is that he was promised "lifetime residual income," as described in AmeriPlan's marketing materials. After an eight-day jury trial the jury returned a verdict in Anderson's favor on all of Anderson's claims and found that Anderson was entitled to $75,000 in past damages, $75,000 in future damages, $372,400 in attorneys' fees through the time of trial, $20,000 in conditional appellate attorneys' fees, and $5 million in exemplary damages. Anderson elected to recover for breach of the sales contract. Based on the jury's verdict, the trial court signed an amended final judgment awarding Anderson $150,000 in actual damages, $372,000 in attorneys' fees through trial, up to $20,000 in conditional appellate attorneys' fees, prejudgment interest, and postjudgment interest.

## ISSUES ON APPEAL

In its first issue AmeriPlan argues that the trial court erred when it rendered judgment in favor of Anderson on his breach-of-contract claim because the evidence is legally insufficient to support the jury's finding that AmeriPlan breached the sales contract. More specifically, AmeriPlan argues that the sales contract is unambiguous and requires AmeriPlan to pay commissions and bonuses only during the continuation of the contract.

When examining a legal sufficiency challenge we review the evidence in the light most favorable to the challenged finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). An appellant challenging the legal sufficiency of the evidence supporting an adverse finding on an issue for which it did not have the burden of proof must show that no evidence supports the jury's adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). A no-evidence challenge must and may only be sustained on appeal if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) the court is barred by the rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011).

To succeed on his claim for breach of the sales contract Anderson was required to prove the following elements: (1) the existence of a valid contract, (2) Anderson's performance or tendered performance, (3) AmeriPlan's breach of the sales contract, and (4) Anderson sustained damages as a result of the breach. *See Helping Hands Home Care, Inc. v. Home Health of Tarrant Cnty., Inc.*, 393 S.W.3d 492, 507 (Tex. App.—Dallas 2013, pet. filed). It is undisputed that the sales contract was a valid contract and that Anderson performed under it. The disputed issue in this case is whether a breach occurred.

–4–

When construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *J.M. Davidson*, 128 S.W.3d at 229.

Section II of the sales contract states that AmeriPlan will pay Anderson bonuses based on a certain formula, and that the bonuses will be paid monthly "in addition to the commission compensation specified in Section IX and under the same terms and conditions of Section IX." Section IX of the sales contract states that AmeriPlan will pay commissions to Anderson while the sales contract is in effect:

> AmeriPlan agrees to pay during the continuation of this Agreement full compensation in the amount of thirty (30%) percent from all membership fees and/or broker fees received by AmeriPlan procured by the Sales Director, servants, and/or employees that the Sales Director may employ.

It is undisputed that AmeriPlan terminated the sales contract in November 2005 and stopped paying commissions and bonuses to Anderson after the termination.

Anderson does not contend that the sales contract is ambiguous or that it required AmeriPlan to pay bonuses to Anderson after the termination of the sales contract. Instead, Anderson argues that the jury was entitled to consider AmeriPlan's promise of "lifetime vested benefits" (i.e., the continuation of bonus payments as long as AmeriPlan continued to receive revenues from Anderson's downline) contained in AmeriPlan's marketing materials in deciding whether AmeriPlan breached the sales contract. In response, AmeriPlan argues that the parol evidence rule barred the jury from considering the statements made in AmeriPlan's marketing materials in deciding whether AmeriPlan breached the sales contract.

The applicability of the parol evidence rule is a question of law that we review de novo. *Jarvis v. K & E Re One, LLC*, 390 S.W.3d 631, 638 (Tex. App.—Dallas 2012, no pet.). The parol evidence rule is not a rule of evidence, but a rule of substantive contract law. *Id.* "An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden,* 266 S.W.3d 447, 450 (Tex. 2008) (per curiam). However, "parol evidence can be used to demonstrate a prior or contemporaneous agreement that is both collateral to and consistent with a binding agreement, and that does not vary or contradict the agreement's express or implied terms or obligations." *Id.* at 451.

Anderson argues that AmeriPlan's promise of "lifetime vested benefits" was a collateral consistent agreement that does not violate the parol evidence rule because it does not vary or contradict the sales contract. More specifically, Anderson argues that the sales contract does not state or imply "that an IBO will lose his right to receive [bonuses], or any other vested benefits" if AmeriPlan terminated the sales contract. To support this argument Anderson contends that section IX of the sales contract only applies to commissions and does not apply to bonuses. We disagree.

We must construe the sales contract as a whole. *Frost Nat'l Bank*, 165 S.W.3d at 312. Section II states that bonuses will be paid "under the same terms and conditions of Section IX." The effect of this provision in section II is that the payment terms and conditions of section IX apply to bonuses, and under section IX bonuses are to be paid only until the sales contract is terminated. Evidence of AmeriPlan's alleged promise to pay bonuses after the termination of the sales contract would therefore alter section IX of the sales contract. As a result, AmeriPlan's alleged promise of lifetime vested benefits is not a collateral consistent agreement and evidence of that alleged promise is barred by the parol evidence rule. *See, e.g.*, *Haden,* 266 S.W.3d at 451

(concluding extraneous evidence would alter terms of written agreement "and is therefore not admissible under the collateral and consistent exception to the parol evidence rule").

In the alternative, Anderson argues that "[u]nder the fraud exception to the parol evidence rule, the jury was entitled to conclude that [AmeriPlan's] promise of lifetime vested benefits was part of, and reflected the true intent of, the [sales contract]." We disagree. Under certain circumstances, a defendant may avoid a contract based on an affirmative defense of fraudulent inducement. *See, e.g.*, *Italian Cowboy Partners v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011) ("A contract is subject to avoidance on the ground of fraudulent inducement."); *Bernal v. Garrison*, 818 S.W.2d 79, 84 (Tex. App.—Corpus Christi 1991, writ denied) ("In order to avoid a contract for fraud, it is necessary to show that the fraudulent representation was relied upon to the extent that it became a material factor in inducing the making of the contract and without which it would not have been made."). But in this case Anderson is not the defendant, and he is not seeking to avoid the sales contract. Instead, Anderson is the plaintiff and is seeking to uphold one material part of the sales contract (the formula for payment of bonuses), while altering another material part of the sales contract (the term). Extraneous evidence cannot be used to alter the terms of an unambiguous contract. *See, e.g.*, *Haden,* 266 S.W.3d at 450. We conclude that evidence of AmeriPlan's alleged promise of lifetime vested benefits was not admissible under the fraud exception to the parol evidence rule to prove that AmeriPlan breached the sales contract.

In summary, the evidence Anderson relied upon to prove that AmeriPlan breached the sales contract was extraneous evidence of AmeriPlan's alleged promise of lifetime vested benefits. This evidence, however, is barred by the parol evidence rule. Because the jury was precluded from giving weight to the only evidence offered to prove a vital fact, the evidence is legally insufficient to support Anderson's claim for breach of written contract. *Serv. Corp. Int'l*,

348 S.W.3d at 228 (evidence is legally insufficient if court is barred by rules of law or of evidence from giving weight to only evidence offered to prove vital fact). We resolve AmeriPlan's first issue in its favor and reverse the trial court's judgment in favor of Anderson on his claim for breach of written contract. As a result, we do not need to address AmeriPlan's third issue, in which it argues, in the alternative, that if we affirm the judgment on the claim for breach of written contract we should vacate the award of attorneys' fees for multiple reasons.

In its second issue AmeriPlan argues that the evidence is legally insufficient to support Anderson's alternative claims for breach of oral contract, fraud, and negligent misrepresentation. During oral argument, however, AmeriPlan's counsel explained that AmeriPlan had fully challenged on appeal only the claim for breach of written contract because that was the only claim addressed in the judgment, and that it had not fully challenged all possible grounds of a hypothetical new judgment in favor of Anderson on one of his possible alternative grounds for recovery. Citing *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 603 (Tex. 2008), in which the Texas Supreme Court held that the plaintiff "should be allowed to present his alternative ground for recovery to the trial court for a determination in the first instance as to whether he should recover under that alternative theory," AmeriPlan's counsel asked this Court to remand this case to the trial court for entry of a new judgment in the event that we concluded that the evidence was legally insufficient to support Anderson's claim for breach of written contract. Based on *DiGiuseppe* and AmeriPlan's request, and because we have concluded that the evidence was legally insufficient to support the only claim addressed in the trial court's judgment—Anderson's claim for breach of written contract—we will not address Anderson's alternative claims and instead will remand this case to the trial court for entry of a new judgment. *See, e.g.*, *Strebel v. Wimberly*, 371 S.W.3d 267, 269 (Tex. App.—Houston [1st Dist.] 2012, pet. filed) ("We reverse the trial court's judgment on [plaintiff's] breach of fiduciary duty claims because we conclude

that the parties contractually disclaimed the fiduciary duties related to profit distributions to [plaintiff]. We remand to the trial court for consideration of the jury's alternative liability and damages findings on [plaintiff's] minority oppression claims and for reconsideration of its attorneys' fees award in light of our opinion.").

**CONCLUSION**

We sustain AmeriPlan's first issue, reverse the trial court's judgment, and remand this case to the trial court for further proceedings consistent with this opinion.


/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE


110628F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

AMERIPLAN CORPORATION, Appellant

No. 05-11-00628-CV  V.

ANTHONY ANDERSON, Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 07-14089-J.
Opinion delivered by Justice Lang-Miers.
Justices FitzGerald and Murphy
participating.


In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent
with this opinion.

It is **ORDERED** that appellant AMERIPLAN CORPORATION recover its costs of this
appeal from appellee ANTHONY ANDERSON.


Judgment entered this 20th day of May, 2013.


/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE