**REVERSE and RENDER; and Opinion Filed March 29, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-18-00401-CV
_____

### JOHN MAULDIN, Appellant
### V.
### MARY JANE REDINGTON AND TED REDINGTON, Appellees

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-09154**

# MEMORANDUM OPINION

Before Justices Brown, Schenck, and Pederson
Opinion by Justice Brown

Appellant John Mauldin appeals the trial court's judgment in favor of appellees Mary Jane

and Ted Redington in this suit for breach of a residential lease agreement. In two issues, Mauldin

challenges the legal and factual sufficiency of the evidence to support the trial court's findings that

Kerri Holt had actual authority to sign the agreement on Mauldin's behalf. For the following

reasons, we reverse the trial court's judgment as to the Redingtons' claims against Mauldin and

render judgment that the Redingtons' take nothing on those claims.

BACKGROUND

In September 2011, Holt's real estate agent Lou Alpert forwarded a residential lease

agreement to the Redingtons for a house they owned at 5750 Swiss Avenue (5750 Swiss). The

agreement listed both Holt and Mauldin as tenants, and Holt had signed both of their names to the

agreement. The Redingtons executed the agreement, which ran for a term from September 3, 2011 to August 31, 2015. Mary Jane returned the signed agreement to Alpert and gave the keys to Holt, who took possession of 5750 Swiss.

In April 2012, the bank returned Holt's rent check for insufficient funds twice. Mary Jane asked Holt for, and received, a cashier's check to cover the rent. In May 2012, the bank also returned the rent check, and Mary Jane again requested a cashier's check. When she did not receive rent for June 2012, Mary Jane wrote and delivered a letter to Holt requiring payment of rent, late fees, and pool service charges due under the agreement. Holt explained she was unable to pay because she did not have a job and Mauldin had "stopped putting money in the account." Redington advised Holt the rent had to be paid by June 15 or Holt would have to vacate 5750 Swiss by June 30. Holt vacated on or about June 30.

Thereafter, the Redingtons brought this action against Holt and Mauldin for breach of the agreement. Holt was deposed, but did not file an answer or appear for trial. Mauldin filed an answer, denying he either executed the agreement or authorized anyone to do so on his behalf and asserting his initials and signature on the agreement were forgeries. After a bench trial, the trial court entered a final judgment against both Holt and Mauldin awarding damages, attorney's fees, and pre- and post-judgment interest to the Redingtons. The trial court also entered findings of fact and conclusions of law, including specific findings that Mauldin (1) authorized Holt to sign his name to the agreement, (2) allowed Holt to believe she was authorized to sign his name to the agreement, and (3) by want of due care, allowed Holt to believe she was authorized to sign his name to the agreement.

APPLICABLE LAW

A trial court's findings of fact after a bench trial have the same force and effect as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Naik v. Naik*, 438

–2–

S.W.3d 166, 172 (Tex. App.—Dallas 2014, no pet.). We review the findings under the same legal and factual sufficiency of the evidence standards used to determine if sufficient evidence exists to support a jury answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Compass Bank v. Goodman*, 416 S.W.3d 715, 718 (Tex. App.—Dallas 2013, pet. denied).

An appellant challenging the legal sufficiency of the evidence supporting an adverse finding on an issue for which the appellant did not have the burden of proof must show no evidence supports the adverse finding. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). We sustain the challenge if "the evidence offered to prove a vital fact is no more than a scintilla." *Id.* There is more than a scintilla of evidence "if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). In our review, we credit evidence supporting the finding if a reasonable factfinder could do so and disregard evidence contrary to the finding unless a reasonable factfinder could not do so. *Graham Cent. Station*, 442 S.W.3d at 263. The final test is "whether the evidence at trial would enable reasonable and fair-minded people to reach the [finding] under review." *Id.* (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

An appellant challenging the factual sufficiency of the evidence supporting an adverse finding on an issue on which it did not have the burden of proof must demonstrate there is insufficient evidence to support the adverse finding. *Weaver & Tidwell, L.L.P. v. Guarantee Co. of N. Am. USA*, 427 S.W.3d 559, 564 (Tex. App.—Dallas 2014, pet. denied). In our review, we consider all the evidence and set the finding aside only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

In a bench trial, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Wright Group Architects-Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 199 (Tex. App.—Dallas 2011, no pet.). When the evidence conflicts, we presume the trial court resolved the inconsistency in favor of the finding if a reasonable person could do so. *Id.* (citing *City of Keller*, 168 S.W.3d at 821).

An agency is a consensual relationship in which the agent acts on behalf of a principal and subject to the principal's control. *Suzlon Energy, Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 841 (Tex. App.—Dallas 2014, no pet.). A principal is liable for an agent's acts only when the agent has actual or apparent authority to do the acts or when the principal ratifies the acts. *Id.* The agent's authority to act on a principal's behalf depends on the principal's words or conduct either to the agent (actual authority) or to a third party (apparent authority). *Id.*

A principal creates actual authority by (1) intentionally conferring authority on the agent, (2) intentionally allowing the agent to believe the agent has authority, or (3) allowing the agent to believe the agent has authority to act by lack of due care. *Jarvis v. K & E Re One, LLC*, 390 S.W.3d 631, 639–40 (Tex. App.—Dallas 2012, no pet.). Actual authority may be express or implied. *Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474, 483 (Tex. App.—Dallas 2007, pet. denied). A principal delegates express actual authority to an agent by words that expressly and directly authorize the agent to do an act or series of acts on behalf of the principal. *Id.* Implied actual authority is authority to do whatever is reasonably necessary and proper to carry out an agent's express powers. *Id.* Thus, an agent may have implied actual authority only if the agent has express actual authority. *Id.*

The question of agency is usually a fact issue. *Park Cities Ltd. Partnership v. Transpo Funding Corp.*, 131 S.W.3d 654, 660 (Tex. App.—Dallas 2004, pet. denied). An agency relationship cannot be presumed; therefore, the party alleging agency has the burden of proving it.

–4–

*Jarvis*, 390 S.W.3d at 639. Both an agency and the extent of an agent's authority may be proved by circumstantial evidence. *Id.* at 641. An agency based on actual authority can be implied from the parties' conduct or the facts and circumstances surrounding the transaction in question, but cannot be based solely on the agent's word or deeds. *Id.*; *CNOOC SE Asia Ltd v. Paladin Resources (SUNDA) Ltd.*, 222 S.W.3d 889, 899 (Tex. App.—Dallas 2007, pet. denied). An alleged agent's declarations, by themselves, are incompetent evidence to establish either the existence or scope of an alleged agency. *Gaines v. Kelly*, 235 S.W.3d 179, 183–84 (Tex. 2007); *R&R Marine, Inc. v. Max Access, Inc.*, 377 S.W.3d 780, 787 (Tex. App.—Beaumont 2012, no pet.).

ANALYSIS

In two issues, Mauldin challenges the legal and factual sufficiency of the evidence to support the trial court's finding that Holt had actual authority to sign Mauldin's name to the lease. Mauldin acknowledges there is evidence that he authorized Holt to provide some information with regard to a lease application, but contends there is no evidence she had actual authority to sign his name to the agreement.

Both parties introduced excerpts from Holt's deposition into evidence. Holt testified Mauldin was her significant other for many years, including when she signed the agreement in September 2011. At the time, Mauldin was paying Holt's expenses, including occasionally helping her make lease payments. He had not previously signed or cosigned a lease agreement for Holt, but had signed, and paid the majority due under, her car loan.

Prior to entering into the agreement to lease 5750 Swiss, Holt completed an application to lease another property. Holt provided Mauldin's personal and financial information and signed his name to the application. It was Holt's understanding that Mauldin had authorized her to sign his name to the application. Holt also completed an application to lease 5750 Swiss, but that application was not admitted into evidence and Holt was not sure if Mauldin's signature was on

the application. Holt subsequently executed the agreement, signing both her and Mauldin's initials and names. She did not tell either Alpert or the Redingtons that she had signed Mauldin's name.

Before Holt completed and submitted the lease documents, Mauldin looked at 5750 Swiss with her and they discussed the lease:

Q. What all had you and [Mauldin] talked about with respect to this lease.

[Holt]. We talked about lots of things, so options.

Q. Okay.

[Holt]. I don't I don't know.

Q. Okay. Was [Mauldin] aware that his name was on the lease as a primary tenant?

[Holt]. It was my understanding that he -- yes.

Q. And how do you have that understanding?

[Holt]. We discussed the fact that because I didn't have current employment

Q. Uh-huh.

[Holt]. and no spouse, that I was concerned about the -- what do you call it -- the -- the fund check --

Q. Uh-huh.

[Holt]. -- for -- to see if they would give me the lease.

Q. Okay.

[Holt]. And so I told him that in order for me to get the lease I thought that it would require his participation.

Q. Okay. And he was agreeable to that?

[Holt]. That was my understanding, yes.

Q. And you had that understanding because he told you that he was agreeable to it?

[Holt]. I -- I -- I discussed it with him, and I thought he said, yes.

Q. Okay. And you operated according to that understanding?

[Holt]. Yes, sir.

Holt also wrote about their discussion in an email she sent Mauldin's counsel: "I signed the lease and included [Mauldin's] information. One night at dinner I explained to [Mauldin] they were giving me a hard time because I did not have a spouse or a job that could be referenced and that I wanted to use his information on the lease." Holt understood that Mauldin agreed. When asked whether Mauldin agreed to have Holt sign and initial his name to the agreement, Holt testified, "It was my understanding that he agreed for me to use his information to pay my lease, and I inferred that meant also that I was allowed to sign it." Holt acknowledged it was possible Mauldin did not understand what she had asked him.

According to Holt, their relationship ended in spring 2012. She was unable to pay rent in June because Mauldin had stopped depositing money into her bank account, which was a joint checking account carrying both of their names.

Mauldin disputed Holt's testimony. He testified they dated off and on for only a few years until 2010 or 2011. They were not in a romantic relationship when she entered into the agreement. They had been partners in a software development business for about eighteen months. They had opened a business checking account, and Holt took a salary from the business account. They business failed to gain traction, and they closed it about five to six months before Holt moved into 5750 Swiss. Mauldin helped Holt financially, placing money into her bank account, while she was trying to find a job. He was surprised that Holt's bank account was a joint account and did not remember opening the account.

Mauldin testified he may have visited one of the properties Holt was interested in leasing. They discussed Holt entering into a lease for 5750 Swiss, but Mauldin remembered Holt telling

him only the terms[1] and that she was "doing it." Mauldin was aware generally that it is not easy to qualify to rent a house with no income and no regular employment, but he disputed that Holt told him she needed help obtaining a lease. Instead, Holt told him she had worked it out with the landlord to obtain the lease without a cosigner. Mauldin did not give her authorization to sign his name or his initials to the agreement. He confirmed, however, the personal and financial information, including his driver license number, address, rent, previous employer and income, were correct on the lease application admitted into evidence. And, Mauldin did not assert a counterclaim against Holt related to the forgery of his name; nor did he press charges for forgery.

Mauldin contends there is no evidence of Holt's actual authority to sign his name to the agreement, and we agree. The evidence shows Mauldin helped Holt with expenses, and Holt told Mauldin she "thought that it would require his participation" for her "to get the lease" and she "thought he said, yes." But, the only evidence regarding Holt's authority to sign Mauldin's name to the agreement was her understanding that he agreed to let her "use his information to pay [her] lease" and, from that, she inferred she was allowed to sign his name. Even then, Holt acknowledged it was possible Mauldin did not understand what she was asking of him. We conclude Holt's vague deposition testimony is no more than a scintilla of evidence that the scope of her actual authority, if any, extended to legally binding Mauldin to the agreement by signing his name.

Moreover, an alleged agent's declarations alone are incompetent evidence to establish the existence or scope of an alleged agency. *Gaines*, 235 S.W.3d at 183–84; *See R&R Marine, Inc.*, 377 S.W.3d at 787 ("vague" statements in employee's affidavit that employer management told him to sign contract and he was acting under employer's authority were not sufficient to establish agency relationship); *Palmer v. Radcliff Fin. Corp.*, 344 S.W.2d 896, 898 (Tex. Civ. App.—

---

[1] Mauldin testified Holt told him a monthly rental amount that was considerably different from the agreement's actual amount.

Houston 1961, writ dism'd) (even though admitted without objection, declaration by alleged agent that he was acting for defendant principal was incompetent to prove agency); *see also Duncanville Dairy Queen, Inc. v. Security Credit Leasing, Inc.*, No. 05-99-01658-CV, 2000 WL 567064, at *2 (Tex. App.—Dallas May 8, 2000, no writ) (not designated for publication) (affidavit testimony by Dairy Queen manager that he lacked authority to sign an equipment lease agreement was incompetent to establish the scope of his agency). Thus, whether Holt's actual authority, if any, extended to signing Mauldin's name to the agreement cannot be established solely by her deposition testimony regarding her understanding of that authority.

Because the evidence is legally insufficient to support the trial court's findings that Holt had actual authority to sign Mauldin's name to the agreement, we sustain Mauldin's first issue. Accordingly, we need not consider Mauldin's second issue challenging the factual sufficiency of the evidence to support the findings.

We reverse the trial court's final judgment as to the Redingtons' claims against Mauldin and render judgment that they take nothing on those claims.

/Ada Brown/
ADA BROWN
JUSTICE

180401F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN MAULDIN, Appellant

No. 05-18-00401-CV     V.

MARY JANE REDINGTON AND TED
REDINGTON, Appellees

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-09154.
Opinion delivered by Justice Brown;
Justices Schenck and Pedersen
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and judgment is **RENDERED** that appellees MARY JANE REDINGTON AND
TED REDINGTON take nothing on their claims against appellant JOHN MAULDIN.

It is **ORDERED** that appellant JOHN MAULDIN recover his costs of this appeal from
appellees MARY JANE REDINGTON AND TED REDINGTON.

Judgment entered this 29th day of March 2019.